**McKENZIE, Appellant,**

**v.**

**WRIGHT STATE UNIVERSITY, Appellee.**

[Cite as *McKenzie v. Wright State Univ.* (1996), 114 Ohio App.3d 437.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API01-106.

Decided Sept. 30, 1996.

438

*Fishman & Fey Co., L.P.A.,* and *Elliot T. Fishman,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for appellee.

CLOSE, Judge.

This is an appeal from a judgment of the Ohio Court of Claims. Plaintiff-appellant, Rochelle McKenzie, was the Assistant Women's Basketball Coach at Wright State University ("WSU"), defendant-appellee. When hired in September 1991, appellant executed a contract of employment with WSU. Among the terms of that contract was a clause which provided that National Collegiate Athletic Association ("NCAA") rules violations could result in disciplinary action "up to and including termination." Further, for purposes of this case, it is undisputed that appellant is black and female and, for the first two years of her employment, received satisfactory-to-good employee evaluations.

NCAA rules and regulations prohibit school officials from providing transportation to student athletes except in connection with official team activities. The providing of transportation outside official team activities is considered impermissible transportation by the NCAA, conferring an "extra benefit" upon a student-athlete which mandates reimbursement by the student-athlete receiving such "extra benefit." During two trips to her parents' home in Cleveland, appellant gave rides to one of her team members. Appellant acknowledged that she knew that these rides were in violation of NCAA rules, but understood that they were minor violations of the rules. Appellant testified that the rides were prompted by her sympathy towards the student-athlete to whom she gave the rides. Appellant told a co-worker about providing the student-athlete the rides to Cleveland after the fact. Although WSU, Department of Athletics, in its policies and procedure manual, states that an employee must personally report any possible NCAA rules violations to the compliance director, appellant declined to report herself; however, she testified at trial that she intended to do so at the next annual NCAA compliance meeting.

In June 1993, WSU's Women's Basketball Head Coach called appellant into her office asking her whether, in fact, she had given a student-athlete a ride to the student-athlete's home. When appellant acknowledged that she had and disclosed the second ride, the head coach reported appellant's NCAA rules violation to WSU's Assistant Athletic Director, who was in charge of NCAA compliance. In a meeting between WSU's Athletic Director and appellant, the athletic director advised appellant that, because she had committed willful NCAA violations and had not reported the violations, she could either resign and receive uncontested employment benefits, or she would be fired. Ultimately, appellant resigned from WSU on July 9, 1993, and brought this action for race/sexual discrimination and breach of contract in the Court of Claims.

Appellant sets forth two assignments of error:

"A. ASSIGNMENT OF ERROR NUMBER ONE: The trial court erred by ignoring the manifest weight of the evidence and failing to find that appellant was constructively discharged based upon her race and/or sex, in violation of O.R.C. Chapter 4112.

"B. ASSIGNMENT OF ERROR NUMBER TWO: The trial court erred in failing to find that appellant's constructive discharge constituted a breach of contract."

In analyzing an allegation of race/sexual discrimination, pursuant to R.C. 4112.02(A), the trial court is required to determine (1) whether the employee presented a prima facie case of discrimination; (2) whether the employer showed a reasonable nondiscriminatory rationale for the challenged action; and (3) whether the employee proved that the stated rationale is a pretext for discrimination. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128. It is the employee who initially has the burden of showing a prima facie case. After a prima facie case is shown, it is the employer who then has the burden of showing some nondiscriminatory rationale for such decision. Finally, the burden shifts once again to the employee who has the burden of proving that the stated rationale is merely a pretext for such discrimination. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

A disposition of this first assignment of error hinges principally on establishing the requirements of a prima facie case, wherein appellant must show that (1) she was a member of the statutorily protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by, or her discharge permitted, the retention of a person not belonging to the protected class. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 667, 591 N.E.2d 752, 754-755.

First, there is no question that appellant was a member of two statutorily protected classes based on the fact that she is African–American and female. Therefore, the first requirement of the test is met. For purposes of the second requirement, however, whether appellant was discharged, either constructively or otherwise, or allowed to resign is not significant to the result herein and, therefore, it will not be addressed. Addressing, then, the third requirement, the record demonstrates that there is no question that appellant was qualified for the position as assistant women's basketball coach. Finally, with regard to the fourth requirement, there simply was no evidence in the record that appellant was replaced by, or that her discharge permitted the retention of, a person not belonging to her protected class. Had WSU employed anyone but a black female in this position, arguably appellant could proceed on the basis of either race or sexual discrimination and, had appellee employed a white male, she could have proceeded on both bases. In this case, the record does not show that another person replaced appellant or that WSU retained another person who is not of the protected class. Appellant, therefore, does not succeed in establishing a prima facie case of race and/or sexual discrimination.

█ Even if we presume that a prima facie case had been established, appellant could not show that WSU's reason for terminating her employment was mere pretext. While there was evidence showing that other members of WSU's coaching staff received much less significant punishment for secondary rule violations, the record also shows that there was no other coach who intentionally committed a violation and who willfully failed to report that violation. In fact, the record shows that another WSU coach, a white male, was terminated for a transportation violation because he failed to cooperate with WSU's investigation after failing to report that violation himself. WSU presented a neutral, nondiscriminatory reason for appellant's termination. The burden then shifted to appellant to show that such analysis was pretextual in nature. "Pretext may be proved either by direct evidence that racial [or sexual] animus motivated the discharge or by discrediting the employer's rebuttal evidence." *Plumbers & Steamfitters*, 66 Ohio St.2d at 198, 20 O.O.3d at 203–204, 421 N.E.2d at 132. The trial court essentially found that appellant had failed to prove directly or rebut WSU's evidence. As the trial court's decision was supported by the evidence and because we give deference to the trial court, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273, appellant's first assignment of error is overruled.

██ By way of her second assignment of error, appellant claims breach of contract by WSU. The employment contract, which appellant admittedly understood, stated that NCAA rules and regulation violations could result in termination. Appellant attempts to argue that the discipline meted out by WSU, being

at the far range of possible disciplines for NCAA rules violations pursuant to the employment contract, somehow creates a breach of the contract. There is no stipulation for progressive disciplinary system found within the contract and, as such, WSU cannot be held liable for breach of contract in exercising the discretion which the contract grants. As stated by the Court of Claims, the judiciary will not second-guess, in a discrimination action brought by an employee, a business judgment by an employer making personnel decisions. *Manofsky.*

Accordingly, appellant's second assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

DESHLER and LAZARUS, JJ., concur.