BROCK, Appellant,

v.

GENERAL ELECTRIC COMPANY, Appellee.

[Cite as *Brock v. Gen. Elec. Co.* (1998), 125 Ohio App.3d 403.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970042.

Decided Jan. 30, 1998.

*Mark J. Byrne,* for appellant.

*Jerry S. Sallee,* for appellee.

*Per Curiam.*

Plaintiff-appellant, Douglas Lee Brock, filed a complaint against defendant-appellee, General Electric Company ("G.E."), alleging that it terminated his employment because of a handicap, in violation of R.C. 4112.02(A). Subsequently, G.E. filed a motion for summary judgment.

The evidence supporting and opposing the motion for summary judgment showed that G.E. hired Brock as a supervisor in 1985. In 1989, he began suffering severe bouts of depression and anxiety. At one point, Brock had to be physically restrained after he lost his temper with a subordinate. Another time, he sat in his car in the parking lot and was unable to report for work due to his anxiety. After these incidents, his then supervisor advised him to take a leave of absence to obtain treatment.

Brock received treatment from a counselor and from a physician who diagnosed him as suffering from a depression disorder. During his treatment, Brock determined that a major contributor to his problems was job stress. Conse-

quently, he and his supervisor jointly decided that he would be better suited for a nonsupervisory position. From September 1989 until March 1990, Brock successfully worked a first-shift position that required less overtime and presented fewer demands than his previous position. During that time, he received a favorable evaluation of his performance.

In April 1990, Brock volunteered to be a production-control specialist on the third shift. Initially, his primary duty was "putting out fires," finding parts and tools for the third-shift production supervisors as quickly as possible after the need arose. He was not responsible for any particular workstation.

Approximately two months after Brock began working on third shift, Charles Spaulding became his supervisor. Spaulding stated that before becoming Brock's supervisor he had heard that Brock "had a problem" and that he had suffered "some type of breakdown," though he knew none of the details. Almost immediately, Spaulding expanded Brock's job duties to include primary responsibility for several workstations, including one that was the hardest to keep adequately stocked. Unlike the production-control specialists on other shifts, Brock did not have any support staff to help him locate tools and parts. Brock told Spaulding that he did not believe he could perform those duties without the help of support staff.

Spaulding began having problems with Brock's performance, complaining that Brock's reports were often inaccurate and untimely. Spaulding stated that he also began receiving complaints about Brock's performance from other managers and employees. He informally expressed these concerns to Brock, but, according to Spaulding, Brock's performance problems continued.

Spaulding's first evaluation of Brock in March 1991 discussed the areas where Spaulding felt that Brock needed improvement. Brock disputed Spaulding's review because he felt that any deficiencies in his performance were due solely to the lack of support staff on the third shift. Charles Howison, Spaulding's supervisor, told Brock that Brock's prior supervisors, not Spaulding, had actually provided the negative information contained in the review. However, when Brock confronted those supervisors, they told him that they were satisfied with his performance and that Spaulding and Howison had provided the negative information used in the review. After Brock discussed this discrepancy with Howison, Howison told him that the performance review was indeed inaccurate and would not become a part of his personnel file, and that Brock's performance would be reevaluated. But another evaluation was never conducted.

In the fall of 1991, G.E. decided to reduce the size of its workforce. As was company practice, Spaulding performed a "paired comparison" of the six employees who reported to him, ranking them by using previously established criteria. Spaulding based his rankings upon his personal knowledge of the employees'

performances. After Spaulding compared each of the six employees against each of the other employees, Brock ranked last with a total of zero points. Subsequently, Spaulding reviewed his paired comparison results with Howison, who concurred.

All the managers in Spaulding's group then took the names of their bottom one or two employees and conducted a second paired comparison of the lowest ranking employees who performed similar jobs. Of the fifty-six employees the managers compared, Brock ranked forty-fourth. Because of his poor ranking, G.E. laid off Brock in November 1991. It did not hire anyone to replace him. To the extent his duties were continued, the remaining employees who worked for Spaulding performed them in addition to their existing duties.

After hearing the evidence, the trial court found that Brock had presented a prima facie case of discrimination. It further found that G.E. had presented evidence of a legitimate nondiscriminatory reason for Brock's discharge. Finally, it went on to find that Brock "did not present any relevant admissible evidence to overcome" G.E.'s evidence. Consequently, the court granted G.E.'s motion for summary judgment, and Brock filed a timely appeal from that judgment.

In his sole assignment of error, Brock states that the trial court erred in granting summary judgment in favor of G.E. He argues that he presented direct evidence of G.E.'s discriminatory intent sufficient to create a genuine issue of material fact as to whether G.E.'s stated reason for his discharge was pretextual. Included in this argument is a claim that the trial court inappropriately failed to consider certain evidence he presented. We find that this assignment of error is not well taken.

██ R.C. 4112.02(A) prohibits handicap discrimination. *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 301–302, 658 N.E.2d 738, 741. To establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that the employer took an adverse employment action at least in part because the individual was handicapped, and (3) that the person, though handicapped, could safely and substantially perform the essential functions of the job in question. *Id.* at paragraph one of the syllabus; *Betosky v. Abbott Laboratories* (Sept. 19, 1996), Franklin App. No. 96APE03–373, unreported, 1996 WL 531934.

██ Once the plaintiff meets the burden to present a prima facie case, the burden shifts to the employer to set forth some legitimate nondiscriminatory reason for the action taken. Then, the plaintiff must demonstrate that the employer's stated reason was a pretext for the impermissible discrimination. *Hood, supra,* at 302, 658 N.E.2d at 741–742; *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192,

197–198, 20 O.O.3d 200, 203–204, 421 N.E.2d 128, 132. To establish pretext, the plaintiff may make a direct showing that a discriminatory reason motivated the employer or an indirect showing that the employer's explanation is not credible. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217; *Kline v. Tennessee Valley Auth.* (C.A.6, 1997), 128 F.3d 337, 342–343. If the plaintiff shows that the employer's explanation is not credible, the trier of fact may, but does not have to, draw the inference of intentional discrimination without any further evidence of discrimination. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 418–419; *Kline, supra,* at 343–344; *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6, 1994), 29 F.3d 1078, 1082–1083. But, see, *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 263, 661 N.E.2d 796, 805.

■ These shifting burdens of proof refer to the burden of production and only require the presentation of some evidence. The ultimate burden of persuading the fact finder of intentional discrimination always remains with the plaintiff. *St. Mary's, supra,* at 507, 113 S.Ct. at 2747, 125 L.Ed.2d at 416; *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 360, 666 N.E.2d 257, 264.

■ The trial court found that Brock had presented a prima facie case of discrimination. G.E. disputes that finding, but, for purposes of this decision, we accept the trial court's conclusion. Consequently, G.E. had to present evidence of a nondiscriminatory reason for Brock's discharge. Courts will not second-guess business judgments by an employer in making personnel decisions. *McKenzie v. Wright State Univ.* (1996), 114 Ohio App.3d 437, 442, 683 N.E.2d 381, 384; *Ackerman v. Diamond Shamrock Corp.* (C.A.6, 1982), 670 F.2d 66, 70. Economic distress is a permissible basis for discharging employees as long as the employer implements those discharges in a nondiscriminatory fashion. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 148–149, 6 OBR 202, 203–205, 451 N.E.2d 807, 810, modified on other grounds in *Kohmescher v. Kroger* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439; *Sahadi v. Reynolds Chem., Div. of Hoover Ball & Bearing Co.* (C.A.6, 1980), 636 F.2d 1116, 1118. This is particularly true in reduction-in-force cases where the employee's position is eliminated and not refilled, which often prevents the employee from even making a prima facie case of discrimination. *Chappell v. GTE Products Corp.* (C.A.6, 1986), 803 F.2d 261, 268, fn. 2; *Bellios v. Victor Balata Belting Co.* (S.D.Ohio 1989), 724 F.Supp. 514, 520–521.

G.E. showed that Brock's discharge was the result of large-scale economic-based layoffs and that Brock ranked low in the comparison process used to determine which employees would be laid off in each division. Courts have affirmed decisions granting summary judgment in favor of an employer when

that employer used a ranking system similar to that used by G.E. to select employees for layoff during a reduction in force, as long as that system was not administered in a discriminatory manner. *Rea v. Martin Marietta Corp.* (C.A.10, 1994), 29 F.3d 1450; *Conkwright v. Westinghouse Elec. Corp.* (C.A.4, 1991), 933 F.2d 231.

▆▆ Since G.E. articulated a nondiscriminatory reason for Brock's discharge, the burden shifted to him to show that the reason was pretextual. In the trial court, a dispute arose over the validity of some of the evidence presented by Brock in opposition to G.E.'s motion for summary judgment. Brock presented the affidavit of Larry Bell, a former G.E. employee. Bell stated that on December 9, 1991, he talked with Perry Engstrom, an employee in G.E.'s human resources department. Bell stated that Engstrom told him that G.E. "had a policy of ridding itself of injured employees," and that if anyone told him different they would be lying. But Engstrom's statement did not refer to Brock in any way or to individuals who were handicapped due to a mental illness. It was strictly related to Bell's termination of employment. Courts have held that isolated, abstract comments unrelated to the challenged action are not direct evidence of discrimination and are insufficient to create a genuine issue of fact on the issue of discriminatory intent. *Street v. Gerstenslager Co.* (1995), 103 Ohio App.3d 156, 163, 658 N.E.2d 1105, 1109; *Rea, supra,* 29 F.3d at 1457; *Chappell, supra,* 803 F.2d at 268, fn. 2; *Estes v. Tecumseh Products Co.* (Apr. 12, 1996), Lucas App. No. L–95–231, unreported, 1996 WL 171548. Consequently, we find Engstrom's statement to be irrelevant to the issue in this case and that the trial court properly declined to consider it.

▆▆ Brock also presented the affidavits of two of his coworkers, Gary Monroe and Bill Remly, who stated that Monroe asked their supervisor, Tom Stranko, why Brock was being discharged. Stranko responded that Brock's employment was being terminated because of his "mental problems." We conclude, however, that this statement was inadmissible hearsay and could not have been considered by the trial court in ruling on the motion for summary judgment. See Civ.R. 56(E); *Johnson v. Morris* (1995), 108 Ohio App.3d 343, 348, 670 N.E.2d 1023, 1026.

Brock argues that Stranko's statement is a vicarious admission by a party-opponent. Evid.R. 801(D)(2)(d) provides that a statement is not hearsay if it is offered against a party and is made by "his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]" Brock bore the burden to show that the contents of Stranko's

statements concerned a matter within the scope of his employment. *Hill v. Spiegel, Inc.* (C.A.6, 1983), 708 F.2d 233, 237. But he presented no evidence that Stranko had any input into the decision to terminate Brock's employment. The simple fact that Stranko was a supervisor within the G.E. organization is insufficient to establish that matters bearing upon Brock's discharge were within the scope of his employment. Consequently, on this record, we cannot regard his statement about Brock's termination to be a vicarious admission by G.E. *Id.* Compare *Woodman v. Haemonetics Corp.* (C.A.1, 1995), 51 F.3d 1087, 1093–1094; *Abrams v. Lightolier, Inc.* (C.A.3, 1995), 50 F.3d 1204, 1215–1216; *Hybert v. Hearst Corp.* (C.A.7, 1990), 900 F.2d 1050, 1053.

Accordingly, we conclude that Brock presented no admissible evidence that would allow the finder of fact to reasonably reject G.E's explanation for Brock's discharge. *Kline, supra,* 128 F.3d at 346–347; *Manzer, supra,* 29 F.3d at 1083–1084. Consequently, he presented no evidence to support the conclusion that its stated reason was a pretext for discrimination. See *McKenzie, supra,* 114 Ohio App.3d at 441, 683 N.E.2d at 383; *Fitzgerald v. Alleghany Corp.* (S.D.N.Y.1995), 904 F.Supp. 223, 230–231. We find no issues of material fact. Construing the evidence most strongly in Brock's favor, we hold that reasonable minds could reach but one conclusion, that his discharge was not discriminatory. Therefore, the trial court did not err in granting G.E.'s motion for summary judgment. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Accordingly, we overrule Brock's assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

Painter, P.J., Doan and Sundermann, JJ., concur.