DECISION AND JUDGMENT ENTRY
Linda Conley, acting pro se, appeals from grants of summary judgment in favor of appellees: Clyde Willis, Scioto County Engineer; William Ogg and Wayne Bussler, former Scioto County Commissioners; as well as Columbia Gas of Ohio, and Harry Pappay.
Linda Conley was in the real estate business in the early 1990's. She purchased a 38-acre tract of land in Wheelersburg, Ohio and attempted to develop it into a residential subdivision known as Arganbright Estates that was apparently developed in phases or stages over a period from about 1990 to 1996. The development tract abuts Gallia Pike on the south boundary line, and Gleim Road on the east boundary line. In 1994, a water drainage problem developed on the site when workers began clearing trees from a sloped area near Gallia Pike. This caused flooding to a nearby daycare center, Wee Care Learning Center (Wee Care), and to a residence, located on the opposite side of Gallia Pike. In 1994, the property owners affected by the flooding sued appellant and the Scioto County Commissioners. The Scioto County Commissioners settled with the property owners in 1996; in 1997, the trial court granted default judgment against appellant for failure to comply with discovery orders. Conley apparently did not appeal that judgment.
Appellant's dispute with Columbia Gas of Ohio and Harry Pappay involves three written agreements for the installation of main gas line extensions into Arganbright Estates. These agreements were entered into in 1992, 1994 and 1995. The main gas lines were installed; however, appellant alleges that she has not received certain refunds owed to her for the addition of new gas customers.
Appellant moved to South Carolina in 1996 in an attempt to re-establish her real estate career. However, she returned to Ohio sometime in 1998 and is currently residing in Scioto County, Ohio. In August 1999, appellant filed a pro se complaint in the Scioto County Common Pleas Court that included causes of action against Clyde Willis, Bill Ogg, and Wayne Bussler, the "Scioto County appellees." Appellant sought relief from these county officials based on allegations of negligence, fraud, discrimination, and emotional distress. Appellant also sought relief from Columbia Gas of Ohio, and its former regional manager Harry Pappay, under what is essentially a breach of contract claim. The trial court granted summary judgment in favor of the Scioto County appellees, and in a separate order, the trial court granted summary judgment in favor of Columbia Gas of Ohio and Harry Pappay.
Appellant filed a timely notice of appeal from both grants of summary judgment. However, appellant's brief is deficient in many respects. For instance, her brief does not contain a table of contents, statement of facts or any assignment of error pursuant to App.R. 16(A)(1),(3) and (6). The brief is formatted more in the nature of a complaint with numbered allegations. Based on these deficiencies, the Scioto County appellees filed a motion to strike appellant's brief under App.R. 16 and to dismiss the appeal. We denied this motion finding that, although appellant's pro se brief did not comply with the Appellate Rules, it is sufficient to inform the adverse parties and this Court that appellant contends that the trial court erred by denying her a trial and by granting appellees' motion for summary judgment.
This court has long had a policy of affording "considerable leniency" to pro se litigants. Highland Cty. Bd. of Comm. v. Fasbender (July 28, 1999), Highland App. No. 98CA24, unreported. We have not held pro se
litigants to the same standard as attorneys. Id. This does not mean, however, that we will "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." State ex rel.Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206. A pro se appellant must at least present an identifiable assignment of error for our consideration. Consistent with this approach, we will review the trial court's grant of summary judgment for the errors raised in the body of the appellant's "brief."
We review a trial court's decision to grant summary judgment on a denovo basis. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same criteria as the trial court, which is the standard contained in Civ.R. 56. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to one conclusion when viewing the evidence in favor of the non-moving party, and that conclusion is adverse to the non-moving party. SeeGrafton, supra.
The party moving for summary judgment has the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. To meet its burden, the moving party must specifically refer to the pleadings, depositions, answers to interrogatories, or written stipulations of fact that affirmatively demonstrate that the non-moving party has no evidence to support the non-moving party's claims. Civ.R. 56(C), Id.
If the moving party satisfies its burden, then the burden shifts to the non-moving party to offer specific facts showing a genuine issue for trial. Civ.R. 56(E); Dresher, supra. The non-moving party must come forward with evidence rather than resting on unsupported allegations in the pleadings. Kascak v. Diemer (1996), 112 Ohio App.3d 635, 638. A trial court may grant a properly supported motion for summary judgment if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing the existence of a genuine issue for trial. Mayes v. Holman (1996), 76 Ohio St.3d 147.
 I.
Appellant's claims against the Scioto County appellees are based on negligence, fraud, discrimination and emotional distress. Specifically, appellant alleges that the Scioto County appellees were negligent in failing to maintain the drainage system adjacent to Arganbright Estates; that they committed fraud by convincing her former attorney to resign his representation of her shortly before trial in their previous case; that they discriminated against her based on her gender by requiring her to post a bond; and that she suffered emotional distress as a result of their actions.
The Scioto County appellees raised the statute of limitations as an affirmative defense and argued in their motion for summary judgment that appellant's claims under theories of negligence and discrimination were untimely. In her complaint for negligence, appellant alleges that the Scioto County appellees failed to maintain and repair the drainage system on, and leading from, the Arganbright Estates property. Appellant concedes in her pleadings that the construction at Arganbright Estates accelerated water runoff. However, she claims that the Scioto County appellees were negligent in failing to procure an easement so that she could install drainage pipe on adjacent properties to remedy the flooding problem. She also claims that the Scioto County appellees were negligent in approving the drainage plans for Arganbright Estates, based on an allegation that the appellees were aware of drainage problems at Gallia Pike at the time the plans were approved.
The statute of limitations for suing a political subdivision is two years under R.C. 2744.04(A), which states:
 "An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * shall be brought within two years after the cause of action accrues * * *."
As a general rule, Ohio courts recognize that a cause of action accrues when the defendant's wrongful conduct occurs. Collins v. Sotka (1998),81 Ohio St.3d 506, 507. The wrongful conduct in this case involves actions that allegedly caused flooding problems near Gallia Pike. The pleadings show that the flooding occurred in 1994 and 1995. There is no dispute that appellant was aware of the flooding problems in 1994 and 1995, as well as the alleged conduct that she claims caused the problems. Further, this is not a case involving a continuing injury. There is no indication in the pleadings, or the evidentiary material submitted with the summary judgment motions, that the flooding problem continued up until 1997. On the issue of negligence, we conclude that appellant's cause of action is untimely under R.C. 2744.04(A). Appellant filed suit on August 1999, well over two years after the flooding problems occurred on Gallia Pike. The Scioto County appellees met their burden underDresher by raising the statute of limitations as a basis for their motion for summary judgment. Appellant did not present any factual basis to establish that her cause of action occurred within two years of filing her complaint. She did not provide a reason for not pursing her claims in a timelier manner, or any facts or legal arguments that would toll the statute of limitations. Thus, we conclude that there is no genuine issue of material fact concerning the timeliness of appellant's negligence claim and that the trial court properly granted summary judgment as a matter of law.
In her discrimination action, appellant alleged disparate treatment during development of Arganbright Estates. Appellant claims that — based on her gender — the Scioto County appellees required her to post a performance bond, while other male developers were not required to post a bond under similar circumstances. We construe appellant's discrimination complaint as a 42 U.S.C. § 1983 claim. The applicable statute of limitations for a valid Section 1983 claim in Ohio is two years from the accrual date. Kuhnle Bros. v. County of Geauga (C.A. 6, 1997), 103 F.3d 516; see, also, Peoples Rights Organization v.Montgomery (Apr. 9, 2001), Madison App. No. CA2000-04-018, unreported. The statute of limitations governing a Section 1983 claim of illegal discrimination commences to run when the plaintiff knows, or has reason to know in the exercise of due diligence, of the injury which is the basis for the action. Sevier v. Turner (C.A.6, 1984), 742 F.2d 262, 273.
In their motion for summary judgment, the Scioto County appellees pointed out that appellant failed to assert any claims against them that occurred within two years of filing her complaint. Appellant's pleadings do not indicate the specific date that she was required to post bond during the development of Arganbright Estates. When faced with the motion for summary judgment on the basis of the statute of limitations, it was appellant's legal duty to come forward with evidence to show that the alleged discriminatory act occurred or continued within the two year statute of limitations for a Section 1983 claim. Because she failed to do so, we conclude that appellant's cause of action under Section 1983 is time barred. Summary judgment was properly granted to the Scioto County appellees on this claim.
Appellant's claim for fraud is difficult to discern. In essence, appellant alleges that the Scioto County appellees convinced her former attorney, John Berry, to resign his representation of her shortly before trial in the previous case as a quid pro quo for approving a subdivision plat for Mr. Berry. Appellant claims that she did not discover these facts until August 1998, thus tolling the statute of limitations.
To support a fraud claim, a complainant must prove:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.
Cydrus v. Houser (Nov. 29, 1999), Ross App. No. 98CA2425, unreported, citing Cohen v. Lamko (1984), 10 Ohio St.3d 167, 169; see, also, Burr v.Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. A failure to prove any one of these elements is fatal to the plaintiff's case. Id.
In their motion for summary judgment, the Scioto County appellees argued that appellant's complaint failed to comply with Civ.R. 9(B), and that appellant had failed to state a claim for relief. Civ.R. 9(B) requires that, "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The `circumstances constituting fraud' include the time, place and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." Aluminum LineProds. Co. v. Brad Smith Roofing Co. (1996), 109 Ohio App.3d 246, citingPollock v. Kanter (1990), 68 Ohio App.3d 673. There are usually three reasons cited for the requirement of particularity: (1) particularity is required to protect defendants from the potential harm to their reputations which may attend general accusations of acts involving moral turpitude; (2) particularity ensures that the allegations are concrete and specific so as to provide defendants notice of what conduct is being challenged; and (3) the particularity requirement inhibits the filing of complaints as a pretext for discovery of unknown wrongs. Carman v.LeMasters (Oct. 1, 1990), Jackson App. No. 638, unreported, citing Korodiv. Minot (1987), 40 Ohio App.3d 1.
The only specific allegation that can reasonably be construed as a fraud claim in appellant's complaint involves Mr. Berry's resignation as her attorney. Appellant failed to aver the necessary "circumstances constituting fraud" for a cause of action based on Mr. Berry's resignation. Specifically, she failed to plead that the Scioto County appellees made a representation or concealed any fact that would constitute fraud. Further, appellant did not summit any documentary evidence pursuant to Civ.R. 56 that might conceivably support the existence of such a representation. Thus, we find that the trial court did not err in granting the Scioto County appellees summary judgment on this issue.
We recognize that as a pro se complainant, appellant was at a significant disadvantage in formulating and articulating her claim. However, we cannot create a claim of tortious interference with a contract for her on appeal. It would be legally improper to construe her claim as anything other than one for fraud. The pleadings and evidence submitted clearly fail to state a claim for fraud, thus the claim was properly dismissed on appellees' motion for summary judgment.
Finally, appellant sought relief from the Scioto County appellees for negligent infliction of emotional distress. Appellant claims that the Scioto County appellees proximately caused her to suffer loss of her career, family breakup, an automobile accident, and bankruptcy as a result of their tortious conduct.
In Ohio, a claim of negligent infliction of emotional distress is limited to instances "where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." Bunger v. Lawson (1998), 82 Ohio St.3d 463, 466, citing Heiner v.Moretuzzo (1995), 73 Ohio St.3d 80, 86-87. The Scioto County appellees argued in their motion for summary judgment that appellant had failed to allege any traumatic event that she witnessed or was otherwise involved in that caused her alleged emotional distress. Appellant did not address this issue in her pleadings or memoranda.
Appellant seems to base her cause of action on the mental stress she experienced as a result of having to contend with the drainage problems that developed at Arganbright Estates, and the resultant law suit by adjacent property owners. As the Scioto County appellees point out, there is no allegation or evidence that appellant's alleged stress was caused by witnessing an accident, or that it was due to fear from some physical peril. Thus, we find that appellant failed to present sufficient evidence to establish a claim for negligent infliction of emotional distress under Ohio law. The trial court properly granted summary judgment on appellant's claim of negligent infliction of emotional distress.
 II.
In her claims against Columbia Gas of Ohio (Columbia Gas) and Harry Pappay (Pappay), appellant alleges that Columbia Gas breached its agreement with her by failing to refund a portion of her deposit for installation of gas lines. Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach.Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95, 108.
The record in this case shows that appellant entered into three separate Residential Line Extension Agreements (LEA agreements) with Columbia Gas to provide natural gas service to various residential properties in Arganbright Estates. There is no dispute that the parties are bound by the terms of these LEA agreements. Each agreement specifically addresses the required deposit and the terms for a refund.[1]
Under the terms of each LEA agreement, appellant agreed to pay a specified sum to Columbia Gas. The amount was then subject to a discount or refund for the number of customers that had already committed to gas service at the time of the agreement. In addition, the agreements also called for Columbia Gas to make annual refunds over a ten year period for each new customer whose residential tap was connected directly to the main line.
Potentially, appellant could recoup her initial deposit over the ten year period as new customers were added to the main extension line. However, Columbia Gas specifically reserved the right to make additional "lateral" extensions from the main lines, and excluded any refunds for residential tap connections to these additional "lateral" lines.
In her pleadings, appellant alleges that Columbia Gas breached each LEA agreement by failing to make annual refunds. Appellant also alleges that Pappay, as area director for Columbia Gas, promised her in 1993 that Columbia Gas would install gas lines for Hummingbird Court free of charge if she would enter into the LEA agreement for the line from Hummingbird Court to Tara Court.
In their motion for summary judgment, Columbia Gas and Pappay submitted the affidavit of Jerry Kauffman, Area Manager for Columbia Gas. Mr. Kauffman averred that Columbia Gas had made additional lateral extensions to the main lines and that, under the terms of the agreements, appellant was not entitled to refunds for customer connections from those extensions. The affidavit indicates that the refunds appellant is claiming are for connections to the additional lateral extensions. Further, the affidavit indicates that Columbia Gas has made refunds for two customers who were subsequently added to the first main line installed under the 1992 LEA agreement; but that there have been no additional customers to the main lines that were installed under the 1994 and 1995 LEA agreements.
In her motion for summary judgment, appellant submitted several plat maps; a letter from a gas customer, James A. Smith, requesting a refund of his deposit from Columbia Gas; and several letters from appellant to Columbia Gas and the Ohio Public Utilities Commission stating that she had not received the appropriate refund under the terms of her agreement with Columbia Gas.
Much of appellant's submitted material is inadmissible hearsay. Because the rule requires affidavits to contain material that is admissible at trial, hearsay cannot be the basis for summary judgment under Civ.R. 56(E). See Brock v. Gen. Elec. Co. (1998), 125 Ohio App.3d 403, citingJohnson v. Morris (1995), 108 Ohio App.3d 343, 348. Columbia Gas raised this objection to the trial court. However, we need not address whether each document appellant submitted complies with Civ.R. 56(E), since it is undisputed that the refunds appellant is claiming are for customers who have connections to additional "lateral" extension lines. The language of the three LEA agreements is clear and unambiguous; no refunds are owed for customers whose lines connect to these additional "lateral" line extensions. Under Dresher, Mr. Kauffman's affidavit shifted the burden to appellant to produce evidence that the refunds she is claiming are for direct connections to one of the three main lines originally installed under the LEA agreements. She failed to do this.
Moreover, appellant failed to submit any evidence to support her allegation that Pappay promised her that Columbia Gas would install gas lines for Hummingbird Court free of charge if she would enter into the LEA agreement for the line from Hummingbird Court to Tara Court. Even if appellant had submitted evidence that this statement was made, it would be parole evidence, which is not admissible to contradict the terms of an unambiguous integrated written agreement. Aultman Hospital Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51.
In sum, appellant failed to produce any evidence that Columbia Gas breached a material term of any of its LEA agreements with appellant. Thus, having failed to raise a genuine issue of material fact, and in keeping with the rule that the interpretation of unambiguous contracts present a question of law, the trial court properly granted summary judgment against appellant.
 III.
Finally, appellant claims that she was denied a right to have her case tried before a jury. Any right appellant may have to a trial by jury is only enforceable where there are factual issues to be tried. "An individual's right to a jury trial is not abridged by the proper granting of a motion for summary judgment." Tschantz v. Ferguson (1994),97 Ohio App.3d 693, 713, citing Houk v. Ross (1973), 34 Ohio St.2d 77. Having found that the trial court did not err in granting summary judgment, we overrule this assignment of error.
For all the foregoing reasons, the trial court's grants of summary judgment are affirmed.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ________________________ William H. Harsha, Judge
Abele, P.J. Evans, J.: Concur in Judgment and Opinion.
[1] See attached appendix for the details of these agreements.
Appendix
There are three entrances to the Arganbright Estates development. Shady Brook Lane runs north into the subdivision off of Gallia Pike. Hummingbird Lane and Tara Court run west off of Gleim Road.
The lots on Shady Brook Lane were apparently the first to be developed. In 1992, Columbia Gas entered into the first LEA agreement with appellant to install a 1,430 feet extension line from an existing line on Gallia Pike into the Shady Brook Lane phase of the development. Appellant agreed to pay Columbia Gas $5,217 less $728 as a refund for two customers who had already committed to service. In addition, the 1992 LEA agreement included the following terms:
 1. Applicant shall be entitled to annual refunds for customers added on or before November 30 of each year, in an amount determined by the refund calculation on the reverse side, for each customer added after the payment of the amount specified in paragraph 2 is paid, connected directly off of such mains within 10 years after the execution of this Agreement. The total number of customers for whom the "deduction amount" in paragraph 2 and and refunds under this paragraph are credited or paid, respectively, shall not exceed 13.
 2. The Company reserves the right to make additional extensions or laterals to the mains off the original extension hereunder at any time, and shall not be required to credit any deduction amount or pay any refund to the Applicant on account of any customers secured on such additional extensions or laterals.
As part of a subsequent phase of development, Columbia
 Gas entered into an LEA agreement with appellant in 1994 to install an 855 feet extension line from an existing line on Gleim Road into the Hummingbird Lane area of the development. Appellant agreed to pay Columbia Gas $6,386.85 less $1,494 as refund for two customers who had already committed to service. In addition, the 1994 LEA agreement included the following terms:
 3. The Company shall make a one-time refund for each new customer added each year in an amount equal to $747.00 (hereinafter referred to as the "refund amount"):
 a. after the amount specific in paragraph 2 is paid to Company by the Applicant;
 b. after the number of residences specified in paragraph 2 have become gas customers directly off of such mains;
 c. on or before November 30 of the applicable calendar year in which these conditions are fulfilled; and,
d. within 10 years after the execution of this Agreement.
 The total amount refunded to the Applicant shall not exceed the total deposit originally paid.
* * *
 1. The Company reserves the right to make additional extensions or laterals to the mains from the original extension hereunder at any time, and shall not be required to credit any deduction amount or pay any refund amount to the Applicant on account of any customers secured on such additional extensions or laterals.
In 1995, Columbia Gas entered into the third LEA agreement with appellant for installation of a line extension in the area of Shady Brook Lane and Allison Drive. The relevant terms of this agreement are similar to the terms of the 1994 agreement.