**CHANDLER, Appellant,**

v.

**DUNN HARDWARE, INC. et al., Appellees.**

[Cite as *Chandler v. Dunn Hardware, Inc.*, 168 Ohio App.3d 496, 2006-Ohio-4376.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87354.

Decided Aug. 24, 2006.

Holland Myers & Myers, John F. Myers, and Nancy Holland Myers, for appellant.

Reminger & Reminger Co., L.P.A., Nicholas D. Satullo, and Todd M. Jackett, for appellees.

MICHAEL J. CORRIGAN, Judge.

{¶ 1} Plaintiff, Curtis Chandler, filed this action claiming that his termination as a sales manager for defendant Dunn Hardware, Inc., had been motivated by age discrimination. Dunn Hardware filed a motion for summary judgment in which it denied Chandler's claim and asserted that his termination had been financially motivated. Chandler replied that these reasons were simply a pretext for purposeful discrimination. Although the court found that Chandler established a prima facie case, it nonetheless granted summary judgment to Dunn

Hardware because it found that Chandler had failed to establish a material issue of fact relating to pretext. Chandler appeals the summary judgment.[1]

## I

{¶ 2} R.C. 4112.02(A) states that it is an unlawful discriminatory practice for any employer, because of age, to discharge any person without just cause. R.C. 4112.14(A) further states:

{¶ 3} "(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

{¶ 4} Although R.C. Chapter 4112 is state law, we use federal case law interpreting the analogous provisions of Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, regarding alleged violations of R.C. Chapter 4112. See *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609–610, 575 N.E.2d 1164.

{¶ 5} Proof of discrimination can be made either with direct or indirect evidence. The only proof of direct discrimination offered by Chandler was a statement that Pat Smith, the owner of Dunn Hardware, made during his deposition to the effect that a younger sales person was hired because he was "extremely gung ho which we were not used to." Discriminatory remarks must be "related to the employment decision in question." *McCarthy v. Kemper Life Ins. Cos.* (C.A.7, 1991), 924 F.2d 683, 686. Smith's remark, coming in a deposition, is so temporally unrelated to the decision to terminate that it is irrelevant. And even if it had been made during Chandler's employment, that statement simply characterized the eagerness of the new employee, not Chandler's age. Just because Chandler was in the protected class did not mean that he was excused from showing enthusiasm for the job. *Blackwell v. Cole Taylor Bank* (C.A.7, 1998), 152 F.3d 666. No reasonable person would take this comment as direct evidence of age discrimination.

{¶ 6} Since Chandler offered no proof of overt age discrimination, he had to rely on indirect proof by way of the test set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In *Coryell v. Bank*

---

1. Although in its merit brief, Dunn Hardware styles itself as a "cross-appellant," Dunn Hardware did not file a cross-notice of appeal pursuant to App.R. 3(C), so it did not properly cross-appeal. It argues that the court erred by finding that Chandler made out a prima facie case of discrimination. We consider this an assignment of error under R.C. 2505.22. Given our disposition of this case, consideration of that assignment of error is obviated.

*One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, the Supreme Court held at paragraph one of the syllabus:

{¶ 7} "Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age."

{¶ 8} Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of "a legitimate, nondiscriminatory reason" for the employer's rejection of the employee. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207. If the employer submits admissible evidence that *"taken as true, would permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has met its burden of production, and the prima facie case is no longer pertinent. (Emphasis sic.) *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 509–510, 113 S.Ct. 2742, 125 L.Ed.2d 407.

{¶ 9} The employee may, however, respond to the employer's nondiscriminatory reasons for adverse action by proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668. To show pretext, the employee must prove that the employer's reason is false and that discrimination was the real reason for the adverse employment action. *St. Mary's*, 509 U.S. at 515, 113 S.Ct. 2742, 125 L.Ed.2d 407.

## II

{¶ 10} The issues on appeal are twofold: first, whether Dunn Hardware asserted a legitimate, nondiscriminatory reason for Chandler's discharge, and second, whether Chandler provided sufficient evidence to show that those reasons were a pretext for discrimination.

{¶ 11} The court disposed of the case by summary judgment, so we view the facts in a light most favorable to Chandler. See Civ.R. 56(C).

{¶ 12} Those facts show that Chandler began his employment at Dunn Hardware in 1982. Robert Lancz owned Dunn Hardware at the time. Dunn Hardware sold paint on a wholesale basis, and Lancz wished to build a commercial sales division. This meant calling on painting contractors, builders, and

architects—in short, anyone who might be in the market to purchase paint in large quantities. Chandler had previously worked as a sales representative for Pratt & Lambert and said that Lancz had hired him to "grow" the commercial sales division.

{¶ 13} Chandler testified at deposition that he had success with the division and, at one point, was earning more than $70,000 per year. Dunn Hardware hired a second sales person, and sales continued to grow. However, in 2000, Lancz agreed to move the store across the street, into a smaller space. Chandler testified that Lancz did so because he owned the old space and could profitably lease it to a drug store chain. At that point, business began to suffer, and Lancz took accounts away from Chandler and made them "house accounts"—accounts that were not serviced by the sales staff. This made a huge impact on Chandler's salary, in essence denying him a commission and nearly halving his pay to $40,000 per year. Chandler admitted that Lancz did not make him privy to financial information, but he believed that sales suffered as a result of the move.

{¶ 14} In 2003, Lancz sold the store to Smith. Chandler recalled that at the time, Smith said that finances were tight and that he was not in a position to pay Chandler a commission. In remarks made to the employees at the time he took over the store, Smith gave all of them the impression that they were on probation for one year and had to prove themselves. Nevertheless, Chandler remained positive as Smith told him that he wanted Dunn Hardware to grow quickly—"we were going to set the world on fire."

{¶ 15} Chandler believed that Lancz's hands-off management style had created an atmosphere in which employees were unsupervised. In September 2003, he proposed to Smith that he become a general sales manager for the commercial paint division. He said that he and Smith discussed the job, but that Smith did not create any specific job duties or goals. Chandler did say that Smith left him with the "general feeling" that if put in charge, he would be responsible if "things don't go right."

{¶ 16} In February 2004, Smith hired a new salesperson, Noel Sessler. Sessler had a background in commercial paint, and when consulted, Chandler thought Sessler had enough contacts within the industry to be an asset to the division. Even so, Chandler admitted that other than being consulted by Smith, he did not make the hiring decision.

{¶ 17} Despite being the general sales manager, Chandler did not know Sessler's compensation package. In conversations with Sessler, Chandler learned that, in addition to a base salary, Sessler had been given a chance at earning a commission. Chandler did not know the specifics of Sessler's commission arrangement. As it turns out, Smith said that Sessler's sales goal for earning a commission was so high that he could not possibly meet his goal, so he did not

receive a commission. He said that Sessler's commission arrangement was nothing more than a false incentive.

{¶ 18} Not having this information about the unattainability of Sessler's commission goals, Chandler went to Smith and asked for a similar deal. He told Smith that he wished to resume earning what he had under Lancz and, over the course of several discussions, made proposals for goal-based compensation. One of the proposals involved returning the house accounts that Lancz had taken away. Chandler said that Dunn Hardware's competitors had salespeople calling on these accounts, but Dunn Hardware did not. Smith did return the accounts that Lancz had taken away, but those accounts had dramatically decreased without a salesperson calling on them, so Chandler saw no increase in salary.

{¶ 19} Smith said that he took Chandler's discussion of a commission-pay structure as a demand for a raise. When Chandler tried to show how the division had prospered under him, Smith pointed to flaws in Chandler's interpretation of the numbers and showed him that the commercial paint had been "doing a loss in that department." When Chandler said he could get the pay he required elsewhere, Smith told him to look for another job. Chandler admitted that Smith mistook his proposals for commission-based compensation as a demand for a raise. He did, however, deny demanding a raise, but instead said that he wanted a goal-based commission plan.

{¶ 20} Shortly after these discussions, Smith spoke to two contacts from his largest paint supplier. Both contacts gave Smith the opinion that sales would increase without Chandler. They believed that Chandler had stopped actively selling and was merely taking orders from customers. One of those contacts told Smith that whenever he accompanied Chandler on a sales call, Chandler called on existing accounts. He believed that Sessler, on the other hand, aggressively pursued new business and "was always trying to sell something, he always asked for a sale."

{¶ 21} Smith informed Chandler of his discharge about four weeks later. He explained the discharge by saying that in order to obtain a bank loan, he needed to eliminate "overhead." In addition to Chandler, four other employees were discharged. Smith did not hire any new salespeople, and Sessler and the remaining salesperson absorbed Chandler's accounts.

### III

{¶ 22} In *Olive v. Columbia/HCA Healthcare Corp.* (Mar. 9, 2000), Cuyahoga App. Nos. 75249 and 76349, 2000 WL 263261, we stated:

{¶ 23} "A company's actions taken on behalf of its bottom line cannot form the basis of illegal discrimination absent a discriminatory intent. The courts under-

standably avoid becoming entangled in discussions about the wisdom of business decisions and do not require good business judgment on the part of business executives. *Smith v. Goodyear Tire & Rubber Co.* (C.A.8, 1990), 895 F.2d 467, 472; *Castleman v. Acme Boot Co.* (C.A.7, 1992), 959 F.2d 1417, 1422; *E.E.O.C. v. Clay Printing Co.* (C.A.4, 1992), 955 F.2d 936, 946. Nor, for that matter, do the courts require business executives to exercise any particular moral or ethical judgment in how they structure their own pay. The courts 'must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions.' *Brasic v. Heinemann's Inc.* (C.A.7, 1997), 121 F.3d 281, 287 (citation omitted); *Elrod v. Sears, Roebuck & Co.* (C.A.11, 1991), 939 F.2d 1466, 1470."

{¶ 24} To support its decision to discharge Chandler, Dunn Hardware presented evidence of flat sales. Smith testified at deposition that these flat sales in fact amounted to a loss of revenue when he factored in price increases for the cost of goods sold. Smith also said that contacts at his biggest vendor believed that Chandler had stopped actively pursing new business and instead had relegated himself to taking orders from existing customers. Sessler, on the other hand, undeniably offered inroads into new business. Chandler himself stated that Sessler "did offer in one way probably a more dramatic increase in business because he was coming from the outside." In other words, Sessler's contacts within the paint industry opened up a new client base to Dunn Hardware—contacts that Smith concluded Chandler did not possess and appeared unable or unwilling to pursue.

{¶ 25} As far as the layoff of five employees, Chandler himself agreed that Dunn Hardware had underutilized employees. As a department, Chandler thought that some of those employees should be assigned to the commercial paint division. But even Chandler could not deny that business had suffered since the 2000 move to a different space. His complaint that his salary had been nearly halved was a testament to that fact.

{¶ 26} Chandler made much of his distaste for Smith's management style (and even that of Smith's predecessor). But as noted, the courts will not second-guess management decisions. There was ample evidence to show that Smith believed that discharging Chandler would eliminate costs within the commercial paint division and jump-start the sales department. These were legitimate, nondiscriminatory reasons for the discharge.

## IV

{¶ 27} Chandler argues that Dunn Hardware's stated reasons for discharging him were pretext for discrimination.

{¶ 28} To make a showing of pretext, the plaintiff is required to show by a preponderance of the evidence either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, *or* (3) that they were insufficient to motivate discharge." (Emphasis sic.) *Kier v. Commercial Union Ins. Cos.* (C.A.7, 1987), 808 F.2d 1254, 1259.

{¶ 29} Chandler challenged his discharge under the first ground: that Dunn Hardware had no economic crisis sufficient to justify his discharge. He claimed that Dunn Hardware's financial situation had improved since Smith purchased the store and on the day he was terminated, two of his customers called to congratulate him for rising sales. He therefore maintains that Smith lied about his motive for discharging him.

{¶ 30} "The factfinder is entitled to infer from any 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's proffered reasons for its action that the employer did not act pursuant to those reasons." *Miller v. Eby Realty Group L.L.C.* (C.A.10, 2005), 396 F.3d 1105, 1112, quoting *Fuentes v. Perskie* (C.A.3, 1994), 32 F.3d 759, 765.

{¶ 31} We do not view Chandler's characterization of Dunn Hardware's financial status as proving pretext. Chandler did not offer any hard financial data to substantiate his claim that Dunn Hardware had been improving its bottom line. Instead, he relied on Smith's testimony that when he purchased the store, it was losing $400,000 per year. He said that he broke even the first year and that in the second year, he made a one percent profit.

{¶ 32} What these statements show is that Smith managed to stop the bleeding and then turn the barest of profits in his second year. This was small consolation to Smith, who testified that when he purchased the store, his business plan called for an eight percent increase in sales. Smith further testified that he had always looked at the payroll as a means of trimming expenses. He acknowledged that Dunn Hardware's employees were what set it apart from other hardware stores, so he was reluctant to trim in-store staff. Nevertheless, he found that Chandler had not delivered on his promise to improve commercial sales and, based on comments from vendors, believed that the situation was unlikely to change. None of these offered reasons were so inconsistent as to show pretext.

{¶ 33} We likewise cannot agree with Chandler's argument that Sessler's hire was part of a scheme by Smith to replace Chandler. Chandler himself denied the plausibility of this theory at deposition:

{¶ 34} "Q. Do you believe then that this was a big scheme to bring Noel in to eventually replace you?"

{¶ 35} "A. I can't speculate on what it was. It is pretty clear to me that [sic] later on. It may not have been originally, but it didn't make any sense to

eliminate the person who got you there, and his thing was, you know, you make a lot of money, I can save your salary."

{¶ 36} This answer acknowledged that Chandler did not believe that Smith hired Sessler with the intention of replacing Chandler. Chandler might not have understood the reasons for his discharge, but the record supports the conclusion that Smith came to believe that Sessler, with his superior contacts and enthusiasm for the job, was the better choice to run the department. The evidence shows that Smith believed that Chandler had grown complacent and did not deliver on his promise to improve sales in commercial paint.

{¶ 37} In the end, the absence of either direct or indirect evidence of age discrimination compels our affirmation of the summary judgment. Chandler's charge of discrimination seems nothing more than an attempt by him to make sense of his discharge. The courts have been careful, however, to protect the legitimate business decisions of employers. *McKenzie v. Wright State Univ.* (1996), 114 Ohio App.3d 437, 442, 683 N.E.2d 381. An employee's age is not insulation against job competition from those outside the protected class. The assigned errors are overruled.

Judgment affirmed.

GALLAGHER, P.J., and CALABRESE, J., concur.