**STREET, Appellant,**

**v.**

**GERSTENSLAGER COMPANY, Appellee.**

[Cite as *Street v. Gerstenslager Co.* (1995), 103 Ohio App.3d 156.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 2906.

Decided April 26, 1995.

*Dennis R. Thompson,* for appellant.

*Buckingham, Dolittle & Burroughs Co., L.P.A.,* and *Victor T. Geraci,* for appellee.

QUILLIN, Presiding Judge.

Donald Street appeals the order of the Wayne County Court of Common Pleas finding that his promissory estoppel claim was preempted by federal law and granting summary judgment to defendant, Gerstenslager Company, on his claim for age discrimination. We affirm.

From 1984 to 1991, Street was employed as a factory worker in Gerstenslager's metal stamping plant. Factory employees there were represented by the local branch of the AFL–CIO. Although Street was not a union member, he was a member of the bargaining unit and covered by the collective bargaining agreement ("CBA") between the union and Gerstenslager. In addition to working his job at the factory, Street operated an air conditioning and refrigeration repair business.

Section 1, Article VI of the CBA contains a provision for nonmedical leave of absence which states the following:

"When in the opinion of Management the requirements of service will permit, employee upon request and for good cause shown, may be granted a Leave of

Absence, without pay, for a period not in excess of forty-five (45) days. Such Leave of Absence, if granted, will be given in writing showing the terms thereof, and a copy given to the Union. Any employee who has been granted a Leave of Absence under this section, who engages in self-employment, employment or the rendering of services for wages, commissions, or profit while on said Leave of Absence, which self-employment, employment, or the rendering of service has not been affirmatively approved by the Company in connection with the approval of the Leave of Absence, shall be considered to have voluntarily quit his position with the Company as of the first day of the Leave of Absence."

In May 1991, Street submitted a written application for a ninety-day leave of absence that would begin June 3, 1991 and end September 3, 1991. The application stated that the request was made pursuant to the CBA, Article VI, Section 1. Street claims to have requested the leave for several reasons: time away from the job would allow his medical condition (chronic shoulder and back pain) to improve; the company, according to Street, was experiencing a slow period and his taking a leave of absence might prevent the layoff of another employee; and he would be able to work his repair business during the period.

Although the maximum length of leave permitted by the agreement was forty-five days, Street's request for leave of ninety days was granted. During his leave, the company received an anonymous letter informing them that Street was working during his leave in violation of the terms of the CBA. The company investigated and, as a result of its findings, terminated his employment based on the leave clause that prohibited employees on leave from working other jobs without prior approval. Pursuant to the CBA, Gerstenslager deemed Street to have quit his job effective the first day of his leave, June 3, 1991. Street contends that the company had knowledge of his side business and also knew that he had intended to work during his leave of absence. The company disputes having known that he intended to work his side business when it granted his request for leave.

Street did not pursue the grievance procedure provided in the CBA, but filed suit against the company, asserting a number of claims. Street argues that because the CBA does not provide for leave in excess of forty-five days his leave could not have been granted under the CBA. Therefore, he reasons, his leave must have been granted pursuant to an agreement separate from the CBA. It is on that separate agreement that Street bases his claims.

The trial court granted Gerstenslager's motion for summary judgment, finding that Street's estoppel claims were preempted by federal law and that Street had failed to establish his claim for age discrimination. Street appeals.

Assignment of Error I

"The trial court erred in finding that appellant's promissory/equitable estoppel and breach of contract claims are preempted by the National Labor Relations Act."

Section 301 of the Labor Management Relations Act ("LMRA") provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Section 185(a), Title 29, U.S.Code.

In *Textile Workers v. Lincoln Mills* (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the court recognized that Section 301 expresses a federal policy that federal law apply to disputes arising out of labor contracts.

Street argues that his state common-law claim is not preempted by federal law because he and Gerstenslager entered into a separate contract which provided for a leave of absence in excess of the forty-five days allowed under the CBA. Preemption under Section 301, however, is not so narrow.

In *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206, 215, the court stated, "If the policies that animate § 301 are to be given their proper range * * * the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." The policies at issue mandate not only that collective bargaining agreements be governed by federal law but also that " 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.' " *Id.* at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215, quoting *Bowen v. United States Postal Serv.* (1983), 459 U.S. 212, 224–225, 103 S.Ct. 588, 596, 74 L.Ed.2d 402, 414. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* A contrary result would "allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* Accordingly, Section 301 preempts state claims in two situations: if it is founded on rights created by collective-bargaining agreements or if the rights are created by state law but the application of the law is dependent on an analysis of a collective bargaining agreement. *Lopez v. Continental Can Co., Inc.* (C.A.9, 1992), 961 F.2d 147, 148–149. It should be noted that not all state actions are preempted by federal law. For example, Street's age discrimination claim is not preempted by federal law because the

right not to be fired because of one's age arises independently of the CBA and the claim does not require an interpretation of the CBA for its resolution.

Here, it is clear that Street requested his leave pursuant to the CBA: the provision of the contract was referred to at the top of his application and he stated in deposition testimony that he had read the CBA and requested the leave according to its provisions. In asking the court to find that a leave of absence granted pursuant to the CBA constitutes a new and distinct contract simply because the length of the leave exceeds that provided for in the CBA, Street inherently asks the court to interpret the CBA. It is unnecessary, then, to determine whether Street's rights arise from the CBA or from a separate contract as Street contends because the resolution of his claim is dependent on an analysis of the CBA; in either case, his claims are preempted by federal law.

■ "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 583. Further, "[a] bargaining unit employee may not bring an action for breach of a collective bargaining agreement unless he has exhausted the contractual grievance procedures." *Truex v. Garrett Freightlines, Inc.* (C.A.9, 1985), 784 F.2d 1347, 1353. Had Street brought a contract claim under Section 301, he would have had to have followed the grievance procedure established by the CBA prior to bringing suit in court. As he failed to do so, the trial court did not err in granting summary judgment in favor of Gerstenslager. The assignment of error is overruled.

### Assignment of Error II

"The trial court erred in granting summary judgment to appellee on appellant's age discrimination claim."

■ In reviewing the trial court's entry of summary judgment, we apply the same standard used by the trial court in making its decision. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267,

274. A motion for summary judgment "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. The nonmoving party may not rest upon the bare allegations and denials made in the pleadings, but must submit some evidentiary material showing that there is a genuine issue for trial. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791, 793–794.

 The question here is whether Street has produced sufficient evidence to raise the issue of whether Gerstenslager terminated Street because of his age. A plaintiff can show a defendant's discriminatory intent in different ways: a plaintiff may introduce direct evidence of an employer's intention to discriminate on the basis of age, or, as is more often the case, the plaintiff may introduce circumstantial evidence that raises the inference of discriminatory intent. The United States Supreme Court set out evidentiary standards and guidelines for establishing a prima facie case of racial discrimination in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, the Ohio Supreme Court adopted the *McDonnell Douglas* test and modified it for application to cases of age-based discrimination. The court addressed the issue again in *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus, and modified the test so that it stands as follows:

"Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4101.17 in an employment discharge action, a plaintiff-employee must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class."

Once the plaintiff has established a prima facie case, the employer can avoid liability by showing that the action was taken against the plaintiff for a legitimate nondiscriminatory reason. The plaintiff then has the opportunity to show that the employer's stated reason was pretextual.

 Street argues that it is not necessary for him to establish a prima facie case pursuant to *McDonnell Douglas* or *Kohmescher* because he has presented direct evidence of discrimination. We agree that direct evidence of discrimination obviates showing the prima facie case. Nevertheless, we do not agree that Street has provided direct evidence that Gerstenslager discharged him because of

his age. Street points to the following comment made by Gerstenslager's chief executive officer at a company profit-sharing meeting in 1988: "This company is not worth a damn with all these old people in it." This comment is insufficient to create an issue of material fact which would preclude summary judgment for Gerstenslager because the remark, an isolated comment, was not directed at any particular individual and was made in the abstract. Moreover, there is no nexus between the comment, made three years prior to Street's discharge, and the action taken against Street. See *Gagne v. Northwestern Natl. Ins. Co.* (C.A.6, 1989), 881 F.2d 309, 314; *Chappell v. GTE Prods. Corp.* (C.A.6, 1986), 803 F.2d 261, 268, fn. 2.

In the absence of direct evidence, it was necessary for Street to establish a prima facie case of age-based discrimination. As he did not do so, the trial court did not err in granting summary judgment for Gerstenslager. The assignment of error is therefore overruled.

### Assignment of Error III

"The trial court erred in not granting plaintiff's motion for leave to file an amended complaint."

Street moved to amend his complaint to include a breach of implied contract claim that would also be preempted by federal law for the reasons previously discussed. It is unnecessary, therefore, to address the issue of whether the trial court abused its discretion in denying Street leave to file an amended complaint. App.R. 12(A)(1)(c).

*Judgment affirmed.*

REECE and DICKINSON, JJ., concur.