OPINION
Plaintiff-appellant, Rose Gudin, appeals the July 12, 2000 judgment entry of the Ohio Court of Claims dismissing, pursuant to Civ.R. 41(B)(2), her claim for intentional infliction of emotional distress ("IIED") against defendant-appellee, Western Reserve Psychiatric Hospital. The trial court granted appellee's motion to dismiss on two alternative grounds: (1) that the Court of Claims lacked jurisdiction over appellant's claim because it fell within the grievance provisions of the collective bargaining agreement governing appellant's employment with appellee; and (2) that appellant failed to prove a prima facie case of IIED. Finding no reversible error, we affirm.
On January 15, 1998, appellant, a registered nurse and former employee of appellee, filed her complaint against appellee in the Ohio Court of Claims raising, inter alia, a claim for IIED.[1] Appellant generally alleged that she was forced to seek early retirement from her employment at the Western Reserve Psychiatric Hospital due to harassing and humiliating conduct of her supervisors, in particular, her immediate supervisor Mr. Indra Sharma.
On September 8, 1998, the parties stipulated that appellant's three supervisors at the hospital, including Sharma, were entitled to civil immunity pursuant to R.C. 9.86. In this stipulation, the parties specifically agreed that, at all times relevant to the case, the three supervisors acted within the course and scope of their official employment duties and responsibilities, and acted "without malicious purpose, not in bad faith, and not in a wanton or reckless manner." [Stipulation and agreed order vacating the August 20, 1998 Immunity Hearing, R. 21.]
On July 10, 2000, the issue of liability was tried to the court. At trial, appellant identified the following incidents of mistreatment in support of her IIED claim: (1) that Sharma had scolded her in front of patients; (2) that Sharma wrote appellant up for errors that she did not commit; (3) that Sharma told appellant to "shut up and take it" when she protested his treatment of her, and that he also told her she could "quit if she could not take it anymore"; (4) that Sharma frequently telephoned appellant at home at 8:00 a.m. after her second (3:30 p.m. to midnight) shift, waking appellant up and criticizing her work performance; (5) that appellant was not given an LPN assistant but other RN's were; and (6) that despite the suggestion of the hospital's chief operating officer that appellant transfer to a different shift, no such transfer was ever approved.[2]
Likewise, appellant's friend and former co-worker, Patricia Miller, testified as to the general understaffing problems at the hospital and that appellant did not receive the same LPN assistance that other RNs received during their shift.
At the close of appellant's case, various documents were admitted by the trial court, including a copy of the collective bargaining agreement entered into between appellee and appellant's union, District 1199, The Health Care and Social Service Union, Service Employees International Union AFL-CIO. Article 7 of the collective bargaining agreement contains a multi-step grievance procedure for alleged violations, misinterpretations, or misapplications of the terms of the agreement. The grievance procedure includes final and binding arbitration of such disputes.
Thereafter, appellee moved, pursuant to Civ.R. 41(B)(2), for dismissal of appellant's IIED claim for lack of jurisdiction and lack of proof. By judgment entry filed July 12, 2000, the trial court granted appellee's motion to dismiss. In so doing, the trial court specifically found that it lacked jurisdiction over appellant's IIED claim pursuant to the terms of the collective bargaining agreement and R.C. 4117.10(A). The trial court found that appellant was limited to the remedies provided in the collective bargaining agreement, specifically, the final and binding grievance procedure established therein. Alternatively, the trial court also found that appellant failed to prove a prima facie case of IIED, in particular, that appellant did not prove that appellee's conduct was extreme or outrageous, or that appellee intentionally or recklessly caused her severe emotional distress.
Appellant timely appealed, raising the following three assignments of error:
 THE TRIAL COURT'S DETERMINATION THAT IT DID NOT HAVE JURISDICTION TO DECIDE THE APPELLANT'S CASE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE PLAINTIFF-APPELLANT'S CLAIMS AROSE FROM OR DEPENDED UPON COLLECTIVE BARGAINING AGREEMENT RIGHTS WAS AN ERRONEOUS FINDING OF FACT OR LAW, AND A PREJUDICIAL AND REVERSIBLE ERROR.
 THE TRIAL COURT'S CLAIMS THAT THE PLAINTIFF DID NOT PROVE A PRIMA FACIE CASE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS WAS AN ERRONEOUS FINDING OF FACT OR LAW, AND A PREJUDICIAL AND REVERSIBLE ERROR.
 THE TRIAL COURT'S DISMISSAL OF THE APPELLANT'S CASE WAS AN ABUSE OF DISCRETION.
Through her three assignments of error, appellant challenges the trial court's two independent basis for dismissing her IIED claim against appellee. As such, the assignments of error are interdependent in that failure on either argument requires affirmance of the trial court's decision. As such, we address the relevant issues (i.e., whether the trial court had jurisdiction to entertain appellant's claim and, if so, whether she otherwise proved her claim) without specific reference to her assignments of error.
As to the jurisdictional issue, R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and the bargaining unit "governs the wages, hours, and terms and conditions of public employment covered by the agreement." That section further provides that "[i]f the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure." Therefore, R.C. 4117.10(A) clearly provides that the collective bargaining agreement controls all matters related to the terms and conditions of employment and, further, when the collective bargaining agreement provides for binding arbitration, R.C. 4117.10(A) recognizes that arbitration provides the exclusive remedy for violations of an employee's employment rights. See, generally, Oglesby v. City of Columbus (Feb. 8, 2001), Franklin App. No. 00AP-544, unreported.
Appellant contends that her IIED claim is wholly independent of the collective bargaining agreement and, therefore, it is not subject to the mandatory grievance procedures, including final and binding arbitration, established under the terms of the collective bargaining agreement. In particular, appellant argues that her IIED claim does not rely on the existence of the collective bargaining agreement, any rights thereunder, or any alleged breach by appellee of the agreement. According to appellant, the collective bargaining agreement is no more relevant to her IIED claim than it would be if she were suing for assault and battery. In support, appellant relies on the analysis of the United States Supreme Court in Lingle v. Norge Div. of Magic Chef, Inc. (1988), 486 U.S. 399, addressing an analogous issue under federal law as to when state-law claims are preempted by collective bargaining agreements under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), Section 185(a), Title 29, U.S.Code.
In Lingle, supra, at 407, the United States Supreme Court held that a state-law retaliatory discharge claim was independent of the collective bargaining agreement and, thus, not preempted by federal labor law, when the state-law claim presented purely factual questions that could be resolved without interpretation of the collective bargaining agreement. In so holding, the United States Supreme Court expressly rejected the argument that the LMRA preempts a state-law claim simply because resolution of such a claim would involve the same factual matters implicated by a dispute under the collective bargaining agreement. Id. at 408-410. As noted by the court, "`not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'" Id. at 413 fn. 12 (quoting Allis-Chalmers Corp. v. Lueck [1985], 471 U.S. 202, 211).
Accordingly, under the Lingle analysis, state-law claims are preempted in two situations: (1) if the state claim is founded on rights created by collective bargaining agreements; or (2) if the rights are created by state law but the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement. Sinea v. Denman Tire Corp. (1999), 135 Ohio App.3d 44, 62; Street v. Gerstenslager Co. (1995), 103 Ohio App.3d 156, 160.
Whether a common law IIED claim is preempted by the collective bargaining agreement under the Lingle analysis is dependant upon a case-by-case analysis of the alleged factual conduct forming the basis for plaintiff's claim. Under Ohio common law, a plaintiff's IIED claim requires plaintiff to show, inter alia, that defendant's conduct was extreme and outrageous. Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, syllabus. However, an employer is not liable for an employee's emotional distress if the employer does no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is likely to cause emotional distress. Hatlestad v. Consol. Rail Corp. (1991), 75 Ohio App.3d 184, 190; see, also, Browning v. Navistar Internatl., Corp. (July 24, 1990), Franklin App. No. 89AP-1081, unreported ("[f]or if defendants were acting purely pursuant to the terms of that collective bargaining agreement, no liability can attach for such conduct").
Therefore, in ascertaining whether the employer's conduct was extreme or outrageous, an examination of the collective bargaining agreement may be required and, as such, IIED claims predicated on allegedly wrongful acts directly related to the terms and conditions of a plaintiff's employment are generally preempted by the collective bargaining agreement. See, e.g., Hatlestad, supra, at 191 (IIED claim based upon allegation that employer improperly delayed determination of whether plaintiff could perform safely and substantially the essential functions of the assigned laborer position was preempted because the time period to make such a determination depended in part on the terms of the collective bargaining agreement); Douglas v. American Information Technologies Corp. (C.A.7, 1989), 877 F.2d 565, 572 (IIED claim premised upon allegations that employer arbitrarily refused to give plaintiff excused work days, gave her an unjustified final warning, and subjected her to unwarranted and excessive scrutiny of her work was preempted because a court was required to interpret the collective bargaining agreement to determine whether such allegedly wrongful conduct was authorized by the agreement).
On the other hand, if plaintiff's IIED claim is premised upon personally abusive conduct by the employer and its supervisors (or conduct that is not arguably sanctioned by the labor contract), the IIED claim is not preempted. See, e.g., Lightning v. Roadway Express, Inc. (C.A.11, 1995), 60 F.3d 1551, 1556-1557 (employee's IIED claim based upon verbal abuse by supervisors and co-workers not preempted); Keehr v. Consolidated Freightways of Delaware, Inc. (C.A.7, 1987), 825 F.2d 133, 137-138 (IIED claim based upon the particularly abusive manner adopted by employer to carry out its decision to have plaintiff fired not preempted; plaintiff alleged that defendant instructed supervisors to make crude and vulgar remarks about the plaintiff's family to provoke him into throwing a punch at his supervisor).
The same analysis applies to a public employee's IIED claim under R.C.4117.10(A). For example, in Myers v. Riley (1994), 98 Ohio App.3d 133, public employees brought IIED claims against their public employers. In determining whether R.C. 4117.10(A) limited resolution of these claims to the binding arbitration provisions of the applicable collective bargaining agreements, the court recognized that, while the alleged injuries arose from behavior that took place at work, the situs of the behavior did not automatically grant jurisdiction over the claims to the arbitrator pursuant to the collective bargaining agreement. Id. at 146. However, the court also held that plaintiff's IIED claims could not encompass all of the behavior about which they complained since some of the allegedly improper actions taken by the employer were covered by the terms of the collective bargaining agreement, i.e., those allegations related to improper withholding of holiday pay, denial of break time, and discipline. Thus, the court allowed the claims to survive dismissal, but only as to conduct not covered by the provision of the collective bargaining agreement. Id. at 146-147.
Here, much of the conduct alleged by appellant in support of her IIED claim likewise involves disputes as to the terms and conditions of her employment and, as such, implicates the terms of the collective bargaining agreement. For example, appellant's contention that she was mistreated because she was written up for errors she did not commit, that she was not assigned a helper to assist her in performing her tasks, and that she was never given a shift transfer as recommended, all requires an examination of the collective bargaining agreement in order to ascertain whether appellee's conduct in this regard constituted an abuse of the existing employer-employee relationship as governed by that agreement. Specifically, such allegations implicate, among others, those provisions of the collective bargaining agreement related to management staffing rights (Article 5), discipline (Article 9), and work schedules (Article 24), including shift and assignment openings (Section 24.17). Thus, to the extent appellant's IIED claim is premised upon these allegations, the trial court correctly ruled that it lacked jurisdiction over it.
Appellant's IIED claim, however, is not only premised upon allegations concerning the terms and condition of her employment, but is also premised upon the allegedly abusive conduct by her supervisor, Indra Sharma. In particular, appellant alleges that Sharma scolded appellant in front of patients, told her to "shut up and take it" when she protested his treatment of her, and telephoned her in the morning when she was sleeping to complain about her work. Arguably, none of these allegations implicate the collective bargaining agreement and, as such, the trial court did have jurisdiction over her IIED claim as limited to such allegations.
We hold, therefore, that the trial court erred in ruling that it lacked jurisdiction to consider appellant's IIED claim in toto. In so holding, however, we find that the trial court's error in this regard was not prejudicial because appellant's factual allegations over which the trial court did have jurisdiction do not support an IIED claim as a matter of law.
To prevail on his claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community"; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it." Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34; see, also, Yeager, supra, syllabus (holding that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm").
Here, appellant failed to create a prima facie case of either of the first two elements of an IIED claim. Simply put, we find that the allegedly abusive conduct by Sharma was not, as a matter of law, so extreme and outrageous as to be considered utterly intolerable in civilized society. Appellant did not testify in any detail about a single incident when she was allegedly scolded in front of patients. Likewise, we cannot find that being told to "shut up and take it" and being telephoned at home at 8:00 a.m. in the morning is alone sufficient to support an IIED claim. As noted by the Ohio Supreme Court, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Yeager, supra, at 375.
Moreover, appellant failed to prove that appellee intended to cause appellant emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff. Appellant's IIED claim was based solely on the alleged improper conduct of her supervisor, Indra Sharma. Yet, in the stipulation entered by the parties, appellant conceded that Sharma acted "without malicious purpose, not in bad faith, and not in a wanton or reckless manner." Having made such a concession, appellant was precluded from supporting her IIED claim under a theory that Sharma intentionally caused or recklessly caused her emotional distress. Cf. Caruso v. State (2000), 136 Ohio App.3d 616, 620
(noting the "malicious purpose" encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified).
We, therefore, hold that the trial court did not err in dismissing appellant's case under the alternative ground that appellant had failed to prove a prima facie case of intentional infliction of emotional distress.
Finding no reversible error, appellant's first, second, and third assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
______________________________________ LAZARUS, J.
TYACK and BROWN, JJ., concur.
[1] Appellant also raised a separate claim for interference with appellant's contractual retirement and vesting rights, but she voluntarily dismissed this claim at trial.
[2] In her brief, appellant further alleges that Sharma refused to give her frequent restroom breaks as they were medically necessary to accommodate a serious bowel disease following two abdominal surgeries. The record, however, does not reflect this allegation. Appellant testified that she had diarrhea seven to eight times a shift and that Sharma knew about her condition. There is no testimony, however, that Sharma prohibited appellant from taking restroom breaks.