OPINION
{¶ 1} Paul L. Renner and Tina G. Renner ("appellants") appeal the October 19, 2001 judgment entry by the Portage County Court of Common Pleas, granting summary judgment to East Manufacturing Corporation ("East") and James W. Bishop ("Bishop"). East and Bishop are collectively referred to as "appellees" in some instances. Appellants also appeal the November 9, 2001 judgment entry, a nunc pro tunc judgment entry from the October 19, 2001 judgment entry, and the September 18, 2000 judgment entry, denying appellants' motion to dismiss the complaint of new party plaintiff, the Ohio Bureau of Workers' Compensation ("BWC").[1] For the foregoing reasons, we affirm the decisions of the lower court.
 {¶ 2} Appellant Paul Renner was employed by East. On March 11, 1998, appellant sustained injuries when he fell from a "hook ladder" while building a flatbed trailer. Appellant used the hook ladder to climb on top of the trailer. The hook ladder was designed to hook over a tarp bar. However, that particular flatbed trailer was not equipped with a tarp bar. Appellant Paul Renner testified that he knew that such a ladder was supposed to hook over a tarp bar.
 {¶ 3} On April 3, 2000, appellants filed their fourth amended complaint against East and Bishop, the personnel manager at East. Appellants asserted the following causes of action: employer intentional tort arising from a workplace injury; retaliatory discharge in violation of R.C. 4123.90; wrongful discharge in tort (public policy) and in breach of employment contract; East, Bishop, and other East employees conspired to violate Paul Renner's right not to be discharged in violation of R.C.4123.90 and in contravention of public policy; East conspired with Bishop and its agents and/or employees to delay approval of Paul Renner's medical care, to retaliate against him for pursuing workers' compensation benefits, to prevent him from promptly returning to work, and to cause him to lose his employment; intentional infliction of emotional distress; and loss of consortium by appellant Tina Renner.[2]
 {¶ 4} On June 2, 2000, appellees sought to join the BWC as a party plaintiff and to order the BWC to assert its subrogation interest, if any, because appellants asserted, among other things, an employer intentional tort. That same day, appellees filed their respective answers to appellants' fourth amended complaint, denying the allegations and setting forth various affirmative defenses. On June 5, 2000, the trial court ordered the BWC to join as a new party plaintiff and to assert its subrogation interest, if any. Consequently, the BWC filed its complaint, contending that it had subrogation rights with respect to the amount that it already paid, as well as future benefits, on behalf of Paul Renner. The BWC claimed that it was entitled to recover any benefits that it expended on behalf of Paul Renner from East. Appellees subsequently filed their respective answers to the BWC's complaint along with their affirmative defenses.
 {¶ 5} On July 28, 2000, appellants filed a motion to dismiss the BWC's complaint. In their motion, appellants alleged that since an employer was not a "third party" entitled to subrogation under R.C.4123.931, the BWC's complaint failed to state a claim. Appellants also alleged that R.C. 4123.931, even if applicable, would constitute a violation of Paul Renner's constitutionally protected right to workers' compensation benefits.
 {¶ 6} The BWC then filed a memorandum in opposition to appellants' motion to dismiss. In their memorandum, the BWC argued that an employer was included in the statutory definition of a third party when the employer commits an intentional tort and that the law regarding the BWC's subrogation interest is clearly constitutional. Subsequently, in a judgment entry filed on September 18, 2000, the trial court denied appellants' motion to dismiss the complaint of new party plaintiff, the BWC.
 {¶ 7} On April 16, 2001, East filed a motion for summary judgment. That same day, Bishop also filed a separate motion for summary judgment. East filed numerous depositions with the trial court.[3] The trial court subsequently granted East's motion for leave to file supplemental information regarding the Industrial Commission of Ohio's denial of Paul Renner's application for violation of a specific safety requirement on the part of East.
 {¶ 8} Appellants then filed separate memorandums in opposition to appellees' motions for summary judgment. Appellants filed additional depositions and other exhibits, including among other things, interrogatories and affidavits.[4] Appellees then filed separate reply briefs in support of their respective motions for summary judgment.
 {¶ 9} In a judgment entry filed on October 19, 2001, the trial court granted appellees' motions for summary judgment. Specifically, as to appellants' intentional tort claim, the trial court stated that the undisputed testimony demonstrated that East had no prior knowledge of a dangerous condition existing because no such condition ever existed. The trial court noted that Paul Renner's testimony was unambiguously clear, demonstrating that he knew of no problems with the hook ladder or the existence of prior injuries. The trial court explained that there was no evidence that East knew that the harm to Paul Renner was "substantially certain" to occur. Next, as to appellants' claim for retaliatory discharge, the trial court stated that East supplied sufficient evidentiary materials that Paul Renner's discharge was dictated by the terms of a valid collective bargaining agreement which provided for discharge when an employee failed to return to work following an approved leave of absence. The trial court explained that appellants' did not provide a sufficient response as required by Civ.R. 56.
 {¶ 10} As to appellants' wrongful discharge claim in tort and contract, the trial court stated that Paul Renner was not an at will employee; therefore, he was prohibited from asserting a wrongful discharge claim in tort. The trial court also indicated that appellants were precluded from pursuing a contract claim because Paul Renner was governed by a collective bargaining agreement of which Local No. 24 declined to pursue the matter under that collective bargaining agreement. The trial court added that Paul Renner's testimony demonstrated that he was terminated pursuant to the terms of the collective bargaining agreement for failing to return to work following an approved leave of absence.
 {¶ 11} As to appellants' claim of conspiracy to discharge and to delay his medical claims, the trial court stated that no underlying unlawful act existed and appellants failed to establish the "two or more" persons requirement necessary for civil conspiracy. Next, as to the intentional infliction of emotional distress claim, the trial court indicated no evidence was provided demonstrating "extreme and outrageous conduct" on the part of appellees. Finally, the trial court explained that appellants failed to establish the existence of the requisite causes of action; thus, a loss of consortium claim was not triggered.
 {¶ 12} On November 6, 2001, appellants renewed their motion to dismiss the complaint of new party plaintiff, the BWC. Appellants again set forth the arguments that an employer was not a "third party" entitled to subrogation under R.C. 4123.9312 and that R.C. 4123.931 violated Paul Renner's constitutionally protected right to workers' compensation benefits. On November 9, 2001, East filed a response to appellants' renewed motion to dismiss the complaint of the BWC. That same day, November 9, 2001, the trial court filed a nunc pro tunc judgment entry from its October 19, 2001 judgment entry that granted summary judgment in favor of appellees. In its nunc pro tunc judgment entry, the trial court directed the clerk of courts to serve all parties with notice of the October 19, 2001 judgment.
 {¶ 13} Thereafter, on November 19, 2001, appellants filed a notice of appeal. An amended notice of appeal was filed on November 29, 2001 to include new party plaintiff, the BWC, as an appellee.[5] On January 8, 2002, Attorney General Betty D. Montgomery filed a motion to dismiss the BWC as a party, pursuant to Holeton v. Crouse Cartage Co.,92 Ohio St.3d 115, 2001-Ohio-109. Attorney General Montgomery maintained that, pursuant to Holeton, the BWC had no statutory right of subrogation in the case. That same day, the trial court granted the BWC's motion to dismiss itself.
 {¶ 14} On January 28, 2002, Attorney General Montgomery filed a similar motion with this court to dismiss the BWC, arguing that, pursuant to Holeton, the BWC did not have a statutory right of subrogation in the case. In a judgment entry filed on May 15, 2002, this court granted the motion to dismiss the BWC as a party to the appeal. However, we noted that our ruling did not determine whether or not Holeton was correctly interpreted. Rather, we merely emphasized that no other party filed any objections to the motion to dismiss, that the BWC's dismissal would not adversely affect the rights of any other party, and that the BWC had a right to dismiss its own claim for relief even at this stage of the proceedings.
 {¶ 15} Briefly, before addressing appellants' specific assignments of errors, we will set out the applicable law for reviewing an appeal pertaining to a motion for summary judgment. On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 1996-Ohio-336. A de novo review requires an independent review of the trial court's decision without any deference to it. Andrews v. Carmody (2001), 145 Ohio App.3d 27,31. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1. Civ.R. 56(C) provides that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. SeeZivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 1998-Ohio-389.
 {¶ 16} Once a moving party satisfies their burden of supporting their motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins, 75 Ohio St.3d 447, 1996-Ohio-211. A "genuine issue" exists when a reasonable jury could return a verdict for the non-moving party based upon the evidence. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248. The principal purpose for Civ.R. 56(E) is to allow the court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. Ormet Primary Aluminum Corp. v. Employers Ins.of Wausau, 88 Ohio St.3d 292, 2000-Ohio-330.
 {¶ 17} Appellants' first assignment of error provides: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting the motions for summary judgment filed by defendants-appellees." Appellants argue the trial court did not consider the evidentiary material submitted by them in opposition to the motions for summary judgment.
 {¶ 18} In their memorandum in opposition to East's motion for summary judgment, appellants indicate that specific deposition filed by East were relied upon in their opposition to East's motion for summary judgment. Appellants further noted in their memorandum in opposition that they filed additional depositions along with, among other things, appellant Paul Renner's affidavit. Throughout the trial court's October 19, 2001 judgment entry, granting summary judgment in favor of appellees, the trial court referenced specific pages from the evidence that it relied upon. The trial court also acknowledged that appellants duly opposed the motions for summary judgment. There is nothing in the record to indicate that the trial court did not consider the evidentiary material submitted by appellants. Appellants' first assignment of error is without merit.
 {¶ 19} Appellants' second assignment of error is as follows: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendant East on the employer intentional tort." Appellants claim that East did not satisfy its burden for summary judgment. Appellants posit that there is a genuine issue of material fact as to whether East knew of the existence of a dangerous condition, process, procedure, or instrumentality within its business operation. Appellants further argue that there is a genuine issue as to whether East knew that harm to Paul Renner was substantially certain to occur as a result of this dangerous condition, process, procedure, or instrumentality. Appellants also add that there is a genuine issue as to whether East required Paul Renner and other employees to continue to perform the dangerous task.
 {¶ 20} In order to establish a claim of employer intentional tort, an employee must demonstrate all of the following: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Gibsonv. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008,¶ 16, citing Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph on of the syllabus. The proof necessary to establish "intent" on the part of an employer is beyond that proof required for negligence and recklessness.Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482,1998-Ohio-408. The mere knowledge and appreciation of a risk, something short of substantial certainty, is not intent. Gibson, supra, at ¶ 17.
 {¶ 21} As stated above, once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the non-moving party may not rest upon allegations or denials of the moving party's pleadings. As to the first requirement for proving an employer intentional tort, an employee must demonstrate the employer's knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operations.
 {¶ 22} In the case before us, upon filing its motion for summary judgment, East filed numerous deposition transcripts. Specifically, John S. Biedka, a former safety manager at East, testified that, during his employment with East, he was not aware of any injuries involving a hook ladder other than the one involving Paul Renner. Moreover, East submitted a July 2, 2001 order by the Industrial Commission of Ohio, finding in favor of East on the merits of appellant Paul Renner's application for an additional award of a violation of a specific safety requirement ("VSSR"). In that order, the Industrial Commission affirmed the Staff Hearing Officer's denial of appellant's application. The staff-hearing officer determined that appellant had not demonstrated that East violated a specific safety requirement when he sustained his injuries. The order further indicated that the parties agreed that hook ladders were excluded from the requirement that they have safety shoes, metal spikes, or spurs. The Industrial Commission's order also stated that, during the hearing, appellant stated that he never had to get on top of a trailer without a tarp bar.[6]
 {¶ 23} Additionally, during his deposition, appellant Paul Renner testified that no one told him to use that particular ladder that day and that he knew such a ladder was supposed to be used with hooks. Paul Renner's VSSR affidavit states that he looked around and grabbed the ladder that he saw in the area. Appellants' appellate brief alleges that this was the only type of ladder available within the entire flatbed department. However, Tracey Rippel's VSSR affidavit, filed by appellants, stated that there were two types of ladders available in the flatbed department, the hook ladders and the in-house made straight ladders for trailers without tarps. Furthermore, appellants' exhibits in John Biedka's deposition transcript include the foreman's report and the safety director's report, which state that appellant used an improper ladder.
 {¶ 24} Consequently, the above evidence, construed most strongly in favor of appellants, refutes the first requirement for an employer intentional tort claim: the employer's knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operations. Reasonable minds cannot differ as to appellants' employer intentional tort claim. Appellants' have not satisfied their reciprocal burden under Civ.R. 56. The trial court correctly granted summary judgment as to appellants' intentional tort claim. Appellants' second assignment of error is without merit.
 {¶ 25} Appellants' third assignment of error provides: "[t] he trial court erred to the prejudice of the plaintiff-appellants by granting summary judgment to defendants-appellees on the cause of action alleging retaliatory discharge in violation of R.C. 4123.90." Appellants contend that Paul Renner was discharged in contravention of R.C. 4123.90. Appellants assert that East's pretextual basis for the retaliatory discharge was that Paul Renner failed to return to work from a medical leave of absence. Appellants stress that Paul Renner was off work on temporary total disability as a result of an industrial injury. Appellants argue that East's claimed basis for discharging Paul Renner gives rise to an inference of retaliatory discharge.
 {¶ 26} An employee establishes a prima facie case for retaliatory discharge when the employee proves the following: (1) an injury on the job; (2) the filing of a workers' compensation claim; and (3) the employee's discharge in contravention of R.C. 4123.90. Green v. BurtonRubber Processing, Inc. (Dec. 11, 1998), 11th Dist. No. 97-G-2102, 1998 Ohio App. LEXIS 5976, at 8. R.C. 4123.90 prohibits an employer from discharging, demoting, reassigning, or taking punitive action against any employee because that employee filed a claim under the Workers' Compensation Act for an industrial injury. Once an employee establishes a prima facie case for retaliatory discharge, the burden of going forward with evidence shifts to the employer to set forth a legitimate, nonretaliatory explanation for the discharge. Kilbarger v. Anchor HockingGlass Co. (1997), 120 Ohio App.3d 332, 338. If the employer provides a legitimate, nonretaliatory reason for the discharge, then the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id. The burden of going forward with evidence shifts between the employee and the employer, however, the employee always retain the ultimate burden of proof in an action filed under R.C. 4123.90. Green at 9.
 {¶ 27} In the case presented, appellants allege that Paul Renner was discharged in retaliation for filing a workers' compensation claim. Appellees countered appellants' claim by contending that Paul Renner was discharged in accordance with the collective bargaining agreement for failing to return to work following the expiration of an approved leave of absence.
 {¶ 28} Paul Renner received a letter, dated August 6, 1998, terminating his employment. The letter, signed by Bishop, stated that appellant failed to return to work on August 1, 1998, following the expiration of a medical leave of absence. The letter indicated that appellant violated Article 19 of the collective bargaining agreement when he failed to return from an approved leave of absence. Article 19 of the collective bargaining agreement provides that employment shall terminate when, inter alia, there is a "failure to report to work following expiration of an approved leave of absence." Appellant Paul Renner filed a grievance pertaining to the circumstances of his discharge. However, Teamsters Local Union 24 subsequently informed appellant that his grievance was withdrawn because his chances of winning were slim without any other evidence.
 {¶ 29} As stated above, appellants retain the ultimate burden of proof in an action filed under R.C. 4123.90. East set forth a legitimate, nonretaliatory explanation for Paul Renner's discharge. Upon thorough examination of the record, construing the evidence in a light most favorable to appellants, appellants have not demonstrated the existence of a genuine issue for trial as to their retaliatory discharge claim. Appellants have not satisfied their reciprocal burden of demonstrating that the reason given by East was pretextual. As such, the trial court correctly granted summary judgment as to appellants' retaliatory discharge claim. Appellants' third assignment of error is without merit.
 {¶ 30} Appellants' fourth assignment of error states: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendants-appellees on the tort cause of action alleging wrongful discharge in violation of public policy." Appellants assert that Ohio law clearly recognizes a cause of action for wrongful discharge in violation of public policy. Appellants point out that union employees are not limited to the contractual remedies that are available under a collective bargaining agreement; rather, they are entitled to the full protections of public policy, common law, and statutory claims. Appellants further argue that, assuming arguendo, union employees are prohibited from asserting a cause of action for wrongful discharge in violation of public policy, such a rule cannot apply in a case where the union abandons the grievance.
 {¶ 31} The Supreme Court of Ohio has explicitly stated that, in order for an employee to bring a cause of action for wrongful discharge in violation of public policy, the employee must have been an at will employee. Haynes v. Zoological Soc. Of Cincinnati (1995),73 Ohio St.3d 254, syllabus. See also, Noday v. Mahoning Cty. Sheriff,147 Ohio App.3d 38, 2002-Ohio-609; Wiegerig v. Timken Co. (2001),144 Ohio App.3d 664.
 {¶ 32} In the case sub judice, Paul Renner was not an at will employee. Thus, he cannot assert a cause of action for wrongful discharge in violation of public policy. The trial court correctly granted summary judgment to appellees as to appellants' claim for wrongful discharge in violation of public policy. Appellants' fourth assignment of error is without merit.
 {¶ 33} Next, appellant's fifth assignment of error provides: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendants-appellees on the cause of action alleging wrongful discharge in violation of the collective bargaining agreement." Appellants contend that an employer cannot attempt to invoke a "leave of absence" provision in a collective bargaining agreement to establish just cause for discharge an employee who is on leave due to an injury that is compensable under the Workers' Compensation Act. Appellants assert that the instant case involves a simple application of a state law principle that an employer cannot invoke a leave of absence provision to discharge an injured worker on temporary total disability in which the employer knows the employee is on temporary total disability.
 {¶ 34} Briefly, appellees argue that appellant Paul Renner's grievance, concerning his termination, was never arbitrated; thus, appellant did not exhaust the grievance procedure set forth in the collective bargaining agreement and cannot bring suit for breach of the collective bargaining agreement. Appellees cite to Street v.Gerstenslager Co., (1995), 103 Ohio App.3d 156 as support. In Street, the appellant did not pursue the grievance procedure provided in the collective bargaining agreement; rather, the appellant filed suit against the company. Id. at 159. The Ninth Appellate District stated that a bargaining unit employee could not bring an action for breach of a collective bargaining agreement unless he had exhausted the contractual grievance procedures. Street, supra, at 161, citing Truex v. GarrettFreightlines, Inc. (C.A.9, 1985), 784 F.2d 1347, 1353. In the case before, unlike Street, appellant Paul Renner first attempted to pursue the grievance process under the collective bargaining agreement. The record contains the grievance form submitted by appellant and East's answer to appellant's grievance. The union subsequently notified appellant that it was withdrawing his grievance because there was "little to no chance of winning" without additional evidence. When pursuing administrative remedies would be wholly futile or if there is no administrative remedy available which can provide the sought after relief, exhaustion of remedies is not required. McIntosh v. CuyahogaMetro. Housing Auth., 8th District No. 79316, 2002-Ohio-485, 2002 Ohio App. LEXIS 445, at 6, citing Karches v. Cincinnati (1988), 38 Ohio St.3d 12,17.
 {¶ 35} In the case sub judice, the collective bargaining agreement between East and Local Union 24, International Brotherhood of Teamsters, in particular Article 19, states:
 {¶ 36} "Termination — Employment with the Company shall terminate and seniority shall be broken by the following act(s) or occurrences(s):
 {¶ 37} "1. quit or retire;
 {¶ 38} "2. discharge for just cause;
 {¶ 39} "3. failure to report to work following expiration of an approved leave of absence;"
 {¶ 40} Appellants cite to Oil, Chemical and Atomic WorkersInternatl. Union (1987), 41 Ohio App.3d 16 as support. In Oil, Chemicaland Atomic Workers Internatl. Union, this court held that an employee's termination for failing to return from a "leave of absence" as required by the collective bargaining agreement constitutes wrongful discharge when the employee is on leave due to an injury compensable under the Workers' Compensation Act, and the use of the term "leave of absence" in the collective bargaining agreement cannot reasonably be interpreted to refer to such leave. Id.
 {¶ 41} Appellants' attempt to assert the holding of Oil, Chemicaland Atomic Workers Internatl. Union is misplaced. In that case, the issue revolved around an arbitrator's decision to enforce a general leave of absence provision, which allowed the employer to terminate an employee for failing to return from "a leave of absence or vacation." In that case, there was no record that the employee ever applied for a leave of absence, nor was he ever granted a leave of absence under the alleged contractual provision. Therefore, as the general leave provision could not be reasonably interpreted to refer to the employee's leave in that case, this court held that the discharge was wrongful.
 {¶ 42} As previously mentioned, appellant testified in the instant case that he was on a documented, approved leave of absence pursuant to the terms of a valid collective bargaining agreement. Therefore, unlike the employee in Oil, Chemical and Atomic Workers Internatl. Union, Paul Renner was on a documented, approved leave of absence that could be directly traced to the following section of the collective bargaining agreement in this case.
 {¶ 43} As to medical and industrial leaves, Article 23 of the collective bargaining agreement provides:
 {¶ 44} "Personal Leave — * * *
 {¶ 45} "Medical Industrial Leave — An employee suffering an illness or injury or an uncontested industrial injury may be granted a leave of absence not to exceed one (1) year * * *. Requests for a medical leave or industrial leave of absence must be substantiated by medical proof from a licensed medical doctor. If the leave is approved, the employee may be required to submit additional proof to the Company during the period of the absence. * * *"
 {¶ 46} Appellant's leave of absence is clearly identified in Article 23 of the collective bargaining agreement. Also, appellant testified that he was on a properly documented leave pursuant to the above-mentioned section of the collective bargaining agreement. Based on the above, this court is not forced to question whether Article 23 of the collective bargaining agreement applies to appellant's leave. The clear application of the Article 23 leave of absence provision renders the holding of Oil, Chemical, and Atomic Workers Internatl. inapplicable.
 {¶ 47} We stress that the issue raised here by appellant focuses on whether appellee violated the terms of the collective bargaining agreement in terminating appellant while he was receiving workers compensation benefits. In raising this issue, appellant is attempting to merge two separate entities. In State ex rel Clark v. Indus. Comm'n.
(2001), 92 Ohio St.3d 455, the Ohio Supreme Court refused to intertwine the separate entities of collective bargaining and workers compensation.
 {¶ 48} In State ex rel Clark, the Ohio Supreme Court ruled that a leave of absence provision contained in a mutually agreed upon collective bargaining agreement was a remedy separate from those available under the Workers Compensation System. Id. Furthermore, workers compensation laws "do not prohibit a discharge for just and legitimate termination of employment." Anschutz v. Dresser Industries, Inc. (Dec. 11, 1991), 3rd Dist. No. 3-90-8, 1991 Ohio App. LEXIS 6124 at 5. In Anschutz, an employee was terminated under a collective bargaining provision while receiving workers compensation benefits. Id. The Third District held that the employee's receipt of workers compensation benefits at the time he was terminated did not prohibit his valid termination under the collective bargaining agreement. Id at 6. Based on the holdings of Stateex rel Clark and Anschutz, we hold that the fact appellant was receiving workers compensation benefits at the time of his termination is irrelevant in determining whether appellant's termination under the collective bargaining agreement was wrongful. As a result, we focus are attention on the applicable provisions of the collective bargaining agreement.
 {¶ 49} Article 23 of the collective bargaining agreement explicitly provides that an employee, suffering an uncontested industrial injury, may be granted a leave of absence not to exceed one year and that a request for an industrial leave of absence must be substantiated by medical proof from a doctor.
 {¶ 50} In the case presented, the record does not demonstrate that appellant Paul Renner substantiated his request for an additional industrial leave of absence as required under the collective bargaining agreement. Appellant's leave under Article 23 of the collective bargaining agreement ended on August 1, 1998. Subsequently, Paul Renner received a certified letter from East, dated August 6, 1998, terminating his employment for failing to return to work following the expiration of a medical leave of absence, pursuant to Article 19 of the collective bargaining agreement.
 {¶ 51} Appellees assert they did not receive any documentation from appellant's doctor, pertaining to the extension of appellant's leave prior to the deadline of August 1, 1998. The record shows that subsequently, appellant's doctor faxed the document to East on August 10, 1998. A letter from appellant's doctor states that their phone records showed a charge for the August 10, 1998 transmission. While appellants claim that they attempted to submit an extension request prior to the August 1, 1998 deadline, the record fails to substantiate such a claim.
 {¶ 52} Construing the evidence in a light most favorable to appellants, appellants have not overcome their reciprocal burden, demonstrating that a genuine issue exists for trial. Reasonable minds cannot differ as to appellants' cause of action alleging wrongful discharge in violation of the collective bargaining agreement. Based on appellant's past behavior, the record indicates appellant was very aware that he needed to provide medical proof in order to extend his leave under Article 23. In fact, the record indicates that appellant had done so many times before. However, as his leave expired, he failed to comply and the appellees terminated him according to the provision in the collective bargaining agreement. The record is absent any additional proof to substantiate appellant's claim that he complied with the terms of the collective bargaining agreement. As a result, we find that appellees did not violate the collective bargaining agreement in their termination of appellant. The trial court correctly granted summary judgment as to appellants' cause of action alleging wrongful discharge in violation of the collective bargaining agreement. Appellants' fifth assignment of error is without merit.
 {¶ 53} Appellants' sixth assignment of error states: "[t] he trial court erred to the prejudice of the plaintiffs-appellants by granting summary judgment to defendants-appellees on the cause of action alleging conspiracy to discharge/delay medical care." Appellants argue that, relying upon the entire record, there exists a reasonable inference of conspiracy with regard to both appellant Paul Renner's discharge and the delay or denial of his medical care. Appellants contend that there is clear and uncontroverted evidence of a conspiracy to wrongfully discharge appellant Paul Renner by and between Bishop and his underlyings. Appellants further assert that there is clear and uncontroverted evidence of direct contacts between Terri Miller and East regarding appellant Paul Renner's medical care.
 {¶ 54} The following elements are required for a claim of civil conspiracy: (1.) a malicious combination, (2.) two or more persons, (3.) injury to persons or property, and (4.) the existence of an unlawful act independent from the actual conspiracy. Geo-Pro Services, Inc. v. SolarTesting Laboratories, Inc. (2001), 145 Ohio App.3d 514, 527. See also,Nix v. Nationwide Mutual Ins. Co. (Mar. 27, 2000), 5th District No. 1999CA00176, 2000 Ohio App. LEXIS 1279, at 12.
 {¶ 55} As explained by the trial court in its judgment entry, an underlying unlawful act is required before a civil conspiracy claim can succeed. See Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475. As demonstrated in appellants' assignments of error, appellants failed to establish a genuine issue of material fact with respect to the fourth element for a civil conspiracy claim: the existence of an unlawful act. Teresa A. Miller, a registered nurse at VocWorks, testified that the MCO [CareWorks] is responsible for the medical management of a claim. Paula Cunniff, a nurse with CareWorks, stated that, as to appellant Paul Renner, there were never any "C-9's" that were denied. The record before us does not demonstrate the existence of a conspiracy by appellees as to appellant Paul Renner's medical care or his discharge from his employment. Additionally, appellants' appellate brief states that East appealed the BWC's allowance of Paul Renner's additional claims and scheduled appellant for a medical examination. Such conduct is not an unlawful act on the part of appellees. Appellants have not satisfied their reciprocal burden under Civ.R. 56(E). As such, the trial court did not err in granting summary judgment on appellants' claim of civil conspiracy. Appellants' sixth assignment of error is not well taken.
 {¶ 56} Appellants' seventh assignment of error provides: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendants-appellees on the cause of action alleging intentional infliction of emotional distress." Appellants opine that the determination of whether East and Bishop's conduct rises to the level of the tort of intentional infliction of emotional distress is a question of fact. Appellants contend that the extreme and outrageous nature of Paul Renner's termination, the extreme and outrageous conduct in ratifying his termination, and the outrageous actions by appellees towards Paul Renner, who had been severely injured, give rise to a jury question as to whether such conduct was so extreme and outrageous.
 {¶ 57} To prove intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause the plaintiff serious distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." Tenney v. GeneralElectric Co., 11th Dist. No. 2001-T-0035, 2002-Ohio-2975, ¶ 9, citing Phung v. Waste Mgt., Inc. 71 Ohio St.3d 408, 410, 1994-Ohio-389. See also, Jackson v. Alert Fire Safety Equipment, Inc., (1991),58 Ohio St.3d 48, 53-54, citing Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, syllabus. Intentional infliction of emotional distress is an independent tort. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 47.
 {¶ 58} As noted above, to prove intentional infliction ofemotional distress, appellants must show, inter alia, extreme and outrageous conduct on the part of appellees. Construing the evidence before us, in a light most favorable to appellants, appellants have not overcome their reciprocal burden, demonstrating that a genuine issue exists for trial. Nothing in the record before us rises to the level of extreme and outrageous conduct by appellees. Appellants' previous assignments of error do not demonstrate the existence of such conduct. Reasonable minds cannot differ as to appellants' cause of action for intentional infliction of emotional distress. The trial court correctly granted summary judgment as to this cause of action. Appellants' seventh assignment of error is without merit.
 {¶ 59} Appellants' eighth assignment of error states: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendants-appellees on the loss of consortium claim." Appellants assert that appellant Tina Renner suffered a loss of consortium as a result of the injuries to her husband, including the injuries sustained as a result of the employer intentional tort, and the subsequent severe emotional distress arising out of the discharge and conspiracy.
 {¶ 60} Based on our disposition of appellants' assignments of error, the loss of consortium claim by appellant Tina Renner is groundless. As the trial court correctly stated, a loss of consortium claim is a derivative action that is dependent upon the existence of a primary cause of action. The trial court properly granted summary judgment as to appellants' claim for loss of consortium. Appellants' eighth assignment of error is without merit.
 {¶ 61} Next, appellants' ninth assignment of error provides: "[t] he trial court erred to the prejudice of plaintiffs-appellants by granting summary judgment to defendant-appellee James W. Bishop." Appellants contend that managers and supervisors can be personally liable for retaliatory discharge, wrongful discharge, civil conspiracy, and intentional infliction of severe emotional distress.
 {¶ 62} The merits of appellants' ninth assignment of error have been addressed in appellants' previous assignments of error. Appellants' claims for wrongful discharge, retaliatory discharge, conspiracy, and intentional infliction of emotional distress were found meritless. Appellants' ninth assignment of error is not well taken.
 {¶ 63} Finally, appellants' tenth assignment of error provides: "[t] he trial court erred to the prejudice of plaintiffs-appellants by denying plaintiffs-appellants' motion to dismiss the complaint of new party plaintiff Ohio Bureau of Workers' Compensation." Appellants argue that the trial court erred when it denied their motion to dismiss the BWC because the BWC has no statutory right of subrogation in the instant case pursuant to Holeton v. Crouse Cartage Co., 92 Ohio St.3d 115,2001-Ohio-109.
 {¶ 64} On July 28, 2000, appellants filed a motion to dismiss the BWC's complaint. The trial court denied their motion on September 18, 2000. Subsequently, on November 6, 2001, appellants renewed their motion to dismiss the BWC's complaint. Before the trial court rendered a decision as to appellants' renewed motion, Attorney General Montgomery filed a motion with the trial court, on January 8, 2002, to dismiss the BWC pursuant to Holeton, supra. That same day, the trial court granted Attorney General Montgomery's motion to dismiss the BWC as a party. A similar motion to dismiss the BWC, pursuant to Holeton, was filed by Attorney General Montgomery, on January 28, 2002, with this court. We granted the motion to dismiss the BWC as a party to the appeal, noting that our decision did not determine whether or not Holeton was correctly interpreted. Rather, we stressed that no other party objected, that the BWC's dismissal did not adversely affect the rights of any other party, and that the BWC had a right to dismiss its own claim of relief.
 {¶ 65} We also note that the trial court granted the motion to dismiss the BWC after appellants had filed their notice of appeal, which raises the spectrum that its jurisdiction was frozen, and that such action was a void exercise. Under the circumstances here, we do not address the issue as to whether such a ruling by the trial court was in aid of the appeal, which could provide a status of validity.
 {¶ 66} Parenthetically, as Holeton was decided and released on June 27, 2001, the trial court technically erred in failing to dismiss the BWC pursuant to appellant's Nov. 6, 2001 motion. Based on the above-mentioned sequence of events, we hold that appellant suffered no real prejudice on this issue. Appellant's tenth assignment of error is without merit.
 {¶ 67} For the foregoing reasons, appellants' ten assignments of error are without merit. The decision of the Portage County Court of Common Pleas is affirmed.
DONALD R. FORD, J., ROBERT A. NADER, J., concur.
[1] As will be explained in this opinion, the BWC is not a party to the instant appeal.
[2] As an aside, in appellants' prior complaints, CareWorks, Inc. and Local Union 24, International Brotherhood of Teamsters, were also named defendants. However, in a judgment entry filed on March 28, 2000, the claims against CareWorks and Local Union 24, International Brotherhood of Teamsters, were dismissed with prejudice.
[3] East filed the deposition transcripts of Paul Renner, Bishop, Emily A. Yount, Billie Jo Grabski, John S. Biedka, Teresa A. Miller, Sandra Bialke, and Paula Cuniff.
[4] Appellants filed the deposition transcripts of Tracey Rippel, Jeannie Childress, and Teresa Miller.
[5] As an aside, the trial court's October 19, 2001 judgment entry did not dispose of the BWC. However, according to Wise v. Gursky (1981),66 Ohio St.2d 241, there is no issue concerning a final appealable order. In Wise, the Supreme Court of Ohio held that a judgment for a defendant in a civil action, which rendered the defendant's third-party complaint for indemnification or contribution moot, was a final appealable order pursuant to R.C. 2505.02. The Court further noted that Civ.R. 54(B) was not applicable.
[6] East also filed an October 10, 2001 order by the Industrial Commission, denying appellant Paul Renner's motion for a VSSR rehearing. The order stated that appellant did not submit any new or relevant evidence and did not show that its previous order was based on an obvious mistake of fact or a clear mistake of law.