{¶ 40} I would hold that Gerding successfully demonstrated genuine issues of material fact as to whether appellee's proffered reasons for her termination were pretext for age discrimination.
 {¶ 41} The Age Discrimination in Employment Act prohibits employers from discharging older employees on the basis of their age. Section 623(a), Title 29, U.S. Code. A plaintiff claiming age discrimination may choose to establish her case using either direct evidence or
circumstantial evidence alone. Wexler v. White's Fine Furniture,Inc. (C.A.6, 2003), 317 F.3d 564. Gerding chose the circumstantial route. Therefore, the trial court was required to follow the burden-shifting formula of McDonnell Douglas Corp. v. Green (1973),411 U.S. 792. Wexler, 317 F.3d at 574.
 {¶ 42} "Absent direct evidence of age discrimination, to establish a prima facie case of age discrimination in employment discharge, a plaintiff `must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age.'" Meyer v. UnitedParcel Serv., Inc., 174 Ohio App.3d 339, 2007-Ohio-7063, ¶ 62, quotingCoryell v. Bank One Trust Co. N.A., 101 Ohio St.3d 175, 2004-Ohio-723, paragraph one of the syllabus.[1]
 {¶ 43} The trial court found that Gerding had established her prima facie case. The decision herein does not address or alter that conclusion. The trial court and the *Page 18 
majority thus agree that appellee was more likely than not motivated by discriminatory intent. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, paragraph one of the syllabus. The trial court was then obligated to examine appellee's offered reasons for the termination, and, on its motion for summary judgment, was required to draw all inferences in Gerding's favor to determine whether appellee's reasons were pretextual for underlying discrimination.
 {¶ 44} On an employer's motion for summary judgment, "the plaintiff — once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision — must be afforded the `opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Reeves v. Sanderson PlumbingProducts, Inc. (2000), 530 U.S. 133, 143, quoting Texas Dept. ofCommunity Affairs v. Burdine (1981), 450 U.S. 248, 253.
 {¶ 45} In order to create an issue of fact, the plaintiff does not — at the summary judgment stage — have to affirmatively prove discrimination. Rather, the plaintiff only has to raise genuine issues as to whether the employer's explanation is "unworthy of credence." Id., citing Burdine, 450 U.S. at 256. If she can do so, then summary judgment for the defendant must be denied, and the trier of fact decides whether the plaintiff has proven the ultimate issue of actual discrimination. Id., citing Burdine, 450 U.S. at 255. *Page 19 
 {¶ 46} "[A]lthough `the [trier of fact's] rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff,' the trier of fact may `infer the ultimate fact of discrimination from the falsity of the employer's explanation.'"Pelletier v. Rumpke Container Serv. (2001), 142 Ohio App.3d 54, 753
N.E.2d 958, 964, citing Reeves v. Sanderson Plumbing Prod, Inc. (2000),530 U.S. 133, 146-147. In Pelletier, the trial court properly denied a directed verdict for the employer where the jury could believe either the employer's explanation or the employee's explanations for the termination.
 {¶ 47} The majority asserts that Gerding must show that appellee's offered reasons "were insufficient to motivate" the discharge, citingManzer v. Diamond Shamrick Chem. Co. (C.A.6, 1994), 29 F.3d 1078, 1084. This is one of three routes by which a plaintiff may raise issues probative of pretext; a plaintiff does not have to demonstrate all three, as the majority implies. Id., citing St. Mary's Honor Center v.Hicks (1993), 509 U.S. 502, 511; see, also Johnson v. Kroger Co. (C.A.6, 2003), 319 F.3d 858, 866. At the summary judgment stage, Gerding only had to raise a genuine issue of material fact regarding the insufficiency of appellee's reasons. This type of rebuttal attacks "the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide[s] an evidentiary basis for what the Supreme Court has termed `a suspicion of mendacity.'" Manzer, 29 F.3d at 1084, citing Hicks.
 {¶ 48} On an employer's motion for summary judgment, all inferences from the facts must be drawn in favor of the employee; summary judgment is only proper if *Page 20 
reasonable minds can only conclude that the employee was discharged in the absence of underlying discrimination. Ogle v. Kelly (1993),90 Ohio App.3d 392, 395, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. If all inferences support a conclusion that the employer's offered reason is "not worthy of credence," Reeves,530 U.S. at 143, summary judgment for the employer must be denied. A court should not, at the summary judgment stage, completely accept the employer's offered reason for termination at face value and as determinative of the action. While courts may not wish to engage in sorting out finger-pointing, in a discrimination action, it is improper to swallow one side's finger-pointing whole.
 {¶ 49} Wexler expressly repudiated the "business judgment rule." "An employer's business judgment * * * is not an absolute defense to unlawful discrimination." Wexler, 317 F.3d at 576. "Although a rational trier of fact might believe [the employer's] explanation," the court must examine whether the decision is reasonable. If the employer consciously selected a less-qualified candidate, or if the decision was "unsound," "idiosyncratic," or "questionable" in judgment, then underlying age discrimination is likely and summary judgment improper.Wexler, 317 F.3d at 577.
 {¶ 50} Ample evidence demonstrates that Tennaro and Gustin's offered reasons are "not worthy of credence" and constitute questionable judgment. Any one of the following inferences, alone, rebuts appellee's reasons for termination. Together, these inferences strongly indicate pretext for underlying discrimination. *Page 21 
 {¶ 51} First, while Gustin and Tennaro testified that they spoke with appellant repeatedly at monthly staff meetings about her weak performance in budgeting, appellant stated that she never received any negative feedback regarding budgeting at staff meetings. Gustin admitted that at the time of appellant's termination, appellant was responsible for "staying within the budget that was set forth in terms of her programming," and that appellant was "very cost conscious." Appellant also stated that she was not and had never been responsible for budgeting above and beyond the budgeting for programs under her supervision. Gustin and Tennaro criticized Gerding because she "just never grasped" the more advanced budgeting for the entire camp. This, however, was Gustin's responsibility. After Gerding's termination, Cassi's (her replacement's) new job description included the same budgeting responsibility in Gerding's job description — demonstrating that appellee really didn't need someone in Gerding's position to fulfill this function.
 {¶ 52} Second, Gustin and Tennaro testified that Gerding's lack of computer skills hindered appellant's job performance and made her less efficient. Tennaro stated that the lack of computer skills alone rendered Gerding unqualified for a "leadership position." However, Gerding advanced ample evidence demonstrating that computer skills were never required. When she had to manage her budget, she would look at a computer-generated document of the budget, make modifications, and then give it to an administrative assistant who would enter it in the computer for her. She would handwrite all her reports and statistics and then the administrative assistance would enter them into *Page 22 
the computer. Appellee never offered computer training, and while another employee offered to help Gerding learn, time constraints prevented this. When a new skill is required of an employee, the failure to offer sufficient training and then discharging on that basis indicates pretext. Meyer v. United Parcel Serv., Inc.,174 Ohio App.3d 339, 2007-Ohio-7063, ¶ 65. Every yearly performance review fails to mention a need to acquire computer skills, Gerding's written job description did not mention computer skills, and the advertisements for her replacement did not mention computer skills. When Gustin and Tennaro discussed Cassi's qualifications for the position and their reasons for hiring him, they did not mention computer skills. Yet the trial court — without scrutinizing appellee's assertions — pinned its decision on this selected nugget.
 {¶ 53} Third, Tennaro's affidavit is inconsistent with her prior deposition testimony. "If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor." Byrd v. Smith,110 Ohio St.3d 24, 2006-Ohio-3455, paragraph two of the syllabus. While Tennaro's affidavit stated that appellant had "challenged relationships with volunteers and staff," and created a "hostile work environment" requiring "ongoing conflict mediation," Tennaro never mentioned the issue when discussing Gerding's termination in deposition; neither did Gustin. While a similar criticism was voiced in Gerding's 1999 performance review, these issues were not raised in any of the subsequent seven years' performance reviews. Tennaro did not mention *Page 23 
them in her version of the termination meeting; Gerding testified that these reasons were not given to her at the time of her termination.
 {¶ 54} Fourth, Tennaro and Gustin both focus on Gerding's "unwillingness" to assume the camp manager responsibilities in Gustin's absence. That responsibility, however, was supposedly eliminated with Gerding's demotion over one year prior to her termination, because, as Tennaro asserted, Gerding wasn't performing that function. No documentary evidence regarding the demotion appears in the record, Gerding's pay and title were unchanged, and Tennaro could not even remember telling Gerding that she was demoted. Tennaro related what she told Gerding at termination: "[W]e explained to her that * * * she was not fulfilling the responsibilities in the way that we needed her to, that we needed someone to be the assistant camp manager in [Gustin's] absence, and she was not willing to take on those responsibilities and we needed someone that could do that." After Gerding's discharge, Tennaro and Gustin re-structured Gerding's position to eliminate the camp manager functions and Cassi was not given those responsibilities. Inferentially, if what they required was a leader who could fulfill the camp manager responsibilities, the new position would have included that responsibility and they would have hired accordingly. Tennaro's statement, then, that "we needed someone who could do that," is totally belied by her subsequent hiring decision. An incongruity between an employer's explanation and subsequent hiring decision is probative of pretext. See Wexler, 317 F.3d at 577. *Page 24 
 {¶ 55} Fifth, Gerding, age 51, was replaced by a significantly younger person, Cassi, age 24 and 27 years younger than Gerding. Where the age difference is "significant," it both establishes the fourth prong of the prima facie case and supports a finding of pretext. Texas Dept. ofCommunity Affairs v. Burdine (1981), 450 U.S. 248, 256. An age difference of six years or more is "significant," and a difference of ten years or more is "substantial." See Grosjean v. First EnergyCorp. (C.A.6, 2003), 349 F.3d 332, 336-337, collecting cases.
 {¶ 56} Sixth, the majority notes that Gerding only referenced performance reviews through 2003, although she was not discharged until 2006. Tennaro and Gustin had no explanation for why they failed to create performance reviews for Gerding from 2003 to 2006; Gerding should not be punished her supervisors' failure to document. Gerding received excellent performance reviews from February, 1998 until 2003 when her supervisors ceased documentation. It should suffice to observe that Gerding performed well enough to not be terminated until January 2006.
 {¶ 57} Most significantly, the trial court and the majority labor under two inherently contradictory premises: On one hand, the trial court found (and the majority does not address or alter this finding) that Gerding established her prima facie case, including the necessary prong that she was qualified for the position. This equals an acknowledgement that age discrimination more likely than not motivated the discharge. Mauzy, 75 Ohio St.3d 578, paragraph one of the syllabus. Then, they simultaneously conclude that appellee — based upon two supervisors' self-interested statements- *Page 25 
conclusively established that Gerding was not qualified for the position. Either she was qualified or she wasn't. When two courts independently reach contrary, mutually exclusive conclusions on this point, a quintessential "genuine issue of material fact" regarding pretext exists.
 {¶ 58} Again, direct evidence of discriminatory intent is unnecessary if a plaintiff advances issues of fact with circumstantial evidence. "The factfinder is entitled to infer from any `weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's proffered reasons for its actions that the employer did not act pursuant to those reasons." Chandler v. Dunn Hardware,Inc., 168 Ohio App.3d 496, 2006-Ohio-4376, ¶ 30 (emphasis added), quoting Miller v. Eby Realty Group L.L.C. (C.A.10, 2005), 396 F.3d 1105,1112. Viewing the evidence in a light favorable to Gerding, as Civ. R. 56(C) requires, appellee's justifications are weakened, implausible, inconsistent, and indicative of pretext for underlying age discrimination. The "conflicting proof and the inferences that can be drawn therefrom" mean that this case is not so "one-sided" that appellee should prevail as a matter of law. Wexler, 317 F.3d at 578, citingAnderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52.
 {¶ 59} For these reasons, I respectfully dissent.
[1] Gerding brought her claims under only the federal ADEA. Ohio has adopted the federal standard, however, for claims brought pursuant to state law. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578. *Page 1